[No. A056399. First Dist., Div. Five. Feb. 18, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
JOE BALLARD, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

─────────────────────

*Pursuant to California Rules of Court, rule 976.1(a), this opinion is certified for publication with the exception of part II.B.

## COUNSEL

Albert J. Boro, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Sharon G. Birenbaum, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PETERSON, P. J.**—In this case, we conclude the felony of indecent exposure is a crime of moral turpitude, and a prior conviction for this crime is admissible "without limitation" for purposes of impeachment. (Cal. Const., art. I, § 28, subd. (f).)

Appellant was found guilty of two counts of indecently exposing himself, for masturbating near women in movie theaters, and two counts of lewd conduct arising from the same events. He contends reversal is required because: (1) He was improperly impeached with evidence of a prior felony conviction—since he claims the prior conviction, for indecent exposure, did

not involve moral turpitude; (2) two prior instances of indecent exposure at department stores were improperly adduced, in order to show wrongful intent in the latest incidents; (3) the trial court erred in admitting rebuttal evidence of a photograph, showing the clothing appellant was wearing at the time of arrest; and (4) the trial court erred in sentencing.

We conclude a felony conviction for indecent exposure is a crime of moral turpitude which could be used to impeach appellant's testimony, and find no prejudicial abuse of discretion in the trial court's evidentiary rulings. However, we agree a correction of appellant's sentence is necessary.

## I. FACTS AND PROCEDURAL HISTORY

The relevant facts may be briefly summarized.

One victim testified she went to see the movie "Steel Magnolias" with women friends. The movie concerns the relationship between two women friends over the years, and the theater was occupied almost exclusively by women; it was only about one-quarter full.

Appellant sat down in a chair next to the victim and her friends, and began to masturbate. He had unzipped his pants and was stroking his penis; his chair was squeaking.

The victim got up to summon help. When she did so, appellant pulled his pants up to cover himself.

The victim spoke to the manager, who summoned the police. As the police arrived, they caught appellant running out of the theater.

The victim identified appellant. She recognized him as having been at the same movie, in the same theater, about a week before, when she went to see the movie for the first time. On that prior occasion, appellant had only attracted attention by his very hurried exit from the movie.

Another victim testified she went with a woman friend to see the movie "Ghost." The movie is a romance in which a dead man returns from the afterlife to take care of his romantic partner. The theater was only about a quarter full. Appellant sat down in front of the victim just as the movie started; he took off his glasses and slouched down as if he were simply going to go to sleep during the movie.

Appellant, however, began to look around at the women seated nearby. He looked at two women seated to his right; then he looked at the victim's friend; then he looked at the victim "for a while."

Appellant always had one hand down; he stared at the victim for "what seemed like an eternity . . . ." Later, appellant put both hands down into his lap, and "started convulsing." As the victim got up to leave, she saw that appellant had both hands "wrapped around his penis going up and down."

The police were summoned. Appellant left the theater, but then reentered through another door and sat down again. The police removed appellant from the theater. The victim identified him as the man who had been bothering her.

Appellant testified he had not been in the movie theater watching "Steel Magnolias"; he had been jogging near the theater with a guy named "Jim"— whose name he did not know and whom he never saw again after they jogged 10 miles together, ending at the parking lot of the theater—then he was arrested just outside the theater. He was wearing cutoff shorts and a sweatshirt, for jogging.

Appellant testified he did go to see the move "Ghost" after he went to his church that night for a meeting which did not occur; he was just rubbing an old injury to his back or leg during the movie. The trial court allowed appellant to be impeached with one conviction for an unspecified felony involving moral turpitude.

Over appellant's objection, the trial court allowed rebuttal evidence of a photograph taken of appellant at the time of his booking after the incident during "Steel Magnolias"; the photo showed appellant was not wearing the jogging sweats he testified about, and was instead wearing blue jeans with a zipper. On surrebuttal, appellant testified he told the arresting officer he was cold, and the officer gave him some pants to wear. This, however, contradicted the testimony of the officer, who said if appellant had complained of cold, he would have given him a blanket, because there were no extra clothes at the holding cell.

The trial court, pursuant to a pretrial motion by the prosecution, also allowed evidence of two similar incidents of indecent exposure involving appellant, to show wrongful intent to expose for the purposes of sexual arousal. In one incident, the victim was in the women's department at Macy's when she saw appellant facing her and masturbating; his face was "scary"; she reported the matter to the police, and identified appellant shortly after the incident as the man who had bothered her.

The other prior incident occurred at a Capwell's store. The victim, a young girl, was approached by appellant, who stood four to five feet away

from her with his hand near his genitals and said, " 'Would you suck this for me?' "

The jury convicted appellant on all charges. The trial court imposed a two-year total sentence. Appellant timely appealed.

## II. DISCUSSION

We affirm the conviction, finding no abuse of discretion in the trial court's evidentiary rulings. However, we must correct the sentence in one minor particular.

### A. *Use of Felony Conviction for Impeachment*

Appellant first complains of the trial court's ruling that he could be impeached with one of his prior felony convictions. He claims this ruling was error, because the prior conviction—for felony indecent exposure—did not involve "moral turpitude" as that term has been used in defining the felonies which may be used for purposes of impeachment, under the opinion of Justices Kaus, Mosk, and Broussard in *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111]. We conclude the prior conviction was properly admitted for purposes of impeachment.

We begin with the words of the California Constitution, which provides that: "*Any* prior felony conviction of any person in any criminal proceeding . . . *shall* subsequently be used *without limitation* for purposes of impeachment . . . ." (Cal. Const., art. I, § 28, subd. (f) [subdivision (f)]), italics added.) If the plain terms of this constitutional mandate are applied, the prior felony conviction was properly admitted for purposes of impeachment.

#### 1. *The Castro Problem*

Appellant, contending to the contrary, relies, however, upon the lead opinion of Justice Kaus in *Castro*, concurred in by two other justices. The law implicated by this reliance has a somewhat convoluted history.

In *People* v. *Beagle* (1972) 6 Cal.3d 441, 452-453 [99 Cal.Rptr. 313, 492 P.2d 1], the Supreme Court held that Evidence Code section 352[1] (section 352) applied to evidence of prior convictions offered for impeachment, and

---

[1]Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

that Evidence Code section 788 (permitting proof of felony conviction for impeachment purposes) was not exempted from the application of section 352, i.e., read together the two sections provided "discretion to the trial judge to exclude evidence of prior felony convictions when their probative value on credibility is outweighed by the risk of undue prejudice."

Thereafter, these *Beagle* guidelines were addressed by the court in *People* v. *Antick* (1975) 15 Cal.3d 79, 97-99 [123 Cal.Rptr. 475, 539 P.2d 43]and a number of succeeding cases (see *People* v. *Castro, supra,* 38 Cal.3d at pp. 307-308) in which abuse of discretion by trial courts in admitting such proof was found, inter alia, because of remoteness of the felony conviction, admitting the fact of a prior conviction without identifying the crime committed, admitting priors not bearing on truthfulness, admitting a prior of the same crime as that charged,[2] and " 'sanitiz[ing]' " prior convictions by identifying them with such phrases as " 'felony involving theft' " for a robbery conviction. (*People* v. *Barrick* (1982) 33 Cal.3d 115, 127 [187 Cal.Rptr. 716, 654 P.2d 1243].)[3]

The confusion and consternation these decisions created in the trial courts predictably led, on many occasions, to exclusion at trial of a great many prior felony convictions because of the uncertainty of what felony impeachment evidence could be safely allowed and how it was to be presented, i.e., in a " 'sanitized' " form or not. The practical result frequently was the refusal to admit such evidence altogether, for fear of reversal.

The electorate responded to this situation by an initiative measure, Proposition 8 (the Victims' Bill of Rights) which, inter alia, amended our constitution by the addition of subdivision (f), quoted above in pertinent part.

The questions presented the Supreme Court thereafter in *Castro* were these: (a) Was subdivision (f) to be literally interpreted so that *all* felony convictions were admissible for impeachment purposes? (b) After subdivision (f), are such admissible convictions confined to those necessarily involving moral turpitude?

In restricting admissibility of felony convictions to those involving moral turpitude, the lead opinion in *Castro* essentially concluded that the disavowal of any effect on the application of section 352, which is contained in section

---

[2]The trial court need not suppress prior convictions simply because they are identical to the crime charged. (*People* v. *Stewart* (1985) 171 Cal.App.3d 59, 66 [215 Cal.Rptr. 716].)

[3]*Barrick* was decided after the passage of Proposition 8 establishing article I, section 28 of the California Constitution, discussed *post;* but Proposition 8 did not govern in *Barrick* because the trial had preceded its passage. (33 Cal.3d at p. 120, fn. 1.)

28, subdivision (*d*) of article I of the California Constitution, left undisturbed the trial court's discretion to weigh the relevancy and prejudicial effect of prior felony convictions in determining their admissibility. The overriding restrictions applying to exercise of this discretion were these: "[S]ubdivision (d), *as well as due process*, forbids the use of convictions of felonies which do not necessarily involve moral turpitude"; such "moral turpitude," however, was unrestricted "even if the immoral trait is one other than dishonesty." (*People* v. *Castro, supra*, 38 Cal.3d at p. 306, italics added.)

Thus, a two-pronged rationale emerged from the lead opinion in *Castro* for this "moral turpitude" rule. It was asserted, first, that federal due process standards necessarily limited impeachment to felonies involving moral turpitude; and second, that exclusion of felonies not involving moral turpitude was required as a matter of law because such felonies, when reviewed under standards of applicable judicial discretion under section 352, are "marginally relevant but prejudicial." (*People* v. *Castro, supra*, 38 Cal.3d at p. 306.)

In 1992, our Supreme Court recognized that the *Castro* federal due process rationale, for exclusion of felonies not involving moral turpitude, was undermined by the United States Supreme Court in *Green* v. *Bock Laundry Machine Co.* (1989) 490 U.S. 504, 508-527, footnote 4 [104 L.Ed.2d 557, 563-576, 109 S.Ct. 1981]. *Green* had construed then Federal Rules of Evidence, rule 609(a) (28 U.S.C.) as *requiring* admission for impeachment purposes of any conviction for a crime, punishment for which exceeded one year in prison. (See *People* v. *Wheeler* (1992) 4 Cal.4th 284, 296, fn. 6 [14 Cal.Rptr. 418, 841 P.2d 938].) Thus, notions of federal due process no longer support the *Castro* decision, if they ever did. (*Ibid.*)

It is also significant that in *Castro* a four-justice majority explicitly or implicitly *rejected* the other rationale, of asserted marginal relevancy under section 352, for imposition of a "moral turpitude" limitation on the admission of prior convictions for impeachment—although the four justices were seriously divided in their various separate opinions on other points. Justice Grodin concurred in the affirmance of the conviction, since the plurality opinion found the supposed error was harmless; but he pointed out that the rationale invoked was at variance with the constitutional language allowing admission of "any prior felony conviction . . . 'without limitation' . . . ." (*People* v. *Castro, supra*, 38 Cal.3d at pp. 319-320 (conc. and dis. opn. of Grodin, J.).) He suggested that the only question as to admission of a prior conviction was relevance for impeachment, although this question could in practice be the same as the question of whether the prior felony involved "moral turpitude." (*Id.* at p. 322 (conc. and dis. opn. of Grodin, J.).) As Justice Grodin later said in his separate concurring opinion in *People* v.

*Collins* (1986) 42 Cal.3d 378, 396 [228 Cal.Rptr. 899, 722 P.2d 173], "I thought this court was wrong in *People* v. *Castro* [citation], . . . and I still think so."

Then-Justice Lucas also concurred in *Castro, supra,* finding the prior conviction in question was properly admissible " 'without limitation' " to impeach the defendant's testimony. (38 Cal.3d at pp. 322-323 (conc. and dis. opn. of Lucas, J.).) Chief Justice Bird and Justice Reynoso also rejected the "moral turpitude" test (*id.* at p. 323 (conc. and dis. opn. of Bird, C. J.)), finding it unworkable in practice: "The trial courts need clear guidance as to which felonies are admissible to impeach the credibility of a witness. Today's decision not only lacks that clarity but is an open-ended invitation to judicial chaos." (*Id.* at p. 336 (conc. and dis. opn. of Bird, C. J.).)

The "moral turpitude" limitation, questioned or implicitly rejected in *Castro* by four justices at that time, has not yet been explicitly disavowed by subsequent case law, in part because the felonies involved in most reported cases have been found to involve "moral turpitude." Division Three of this district, per Justice Scott, noted the "splintered" nature of the court in *Castro,* and found no prejudicial error where the trial court ruled a defendant charged with robbery could be impeached with his four prior robbery convictions, admittedly crimes of moral turpitude. (*People* v. *Stewart, supra,* 171 Cal.App.3d at pp. 63, 66.) *Stewart* characterized the *Castro* lead opinion's statements concerning the manner of exercise of trial court discretion, as to impeachment by prior felony convictions, as mere "dicta." (*People* v. *Stewart, supra,* 171 Cal.App.3d at pp. 64-65.) Thus, *Stewart,* while apparently disavowing the "dicta" of the *Castro* lead opinion, dealt with impeachment by conviction of felonies admittedly involving moral turpitude, and rationalized its result solely on an analysis of the lower court's section 352 discretion. "[N]o opinion has value as a precedent on points as to which there is no agreement of a majority of the court. [Citations.] Therefore, lacking clear direction from the Supreme Court, we turn to settled principles generally applicable when a trial court has discretion to act [under section 352]." (*People* v. *Stewart, supra,* 171 Cal.App.3d at p. 65.)

*Stewart* was cited with approval by our Supreme Court in *People* v. *Clair* (1992) 2 Cal.4th 629, 655 [7 Cal.Rptr. 564, 828 P.2d 705], wherein the trial court, *in limine,* prevented the proposed impeachment of a *prosecution* witness with a 1965 felony conviction for voluntary manslaughter (which the prosecution conceded was a felony "necessarily involv[ing] moral turpitude") for purposes of subdivision (f). (*Id.* at p. 654.) The trial court (parroting the language of the *Castro* "dicta" (38 Cal.3d at p. 306)) found the prior conviction "marginally relevant but highly prejudicial" and excluded it

"under [section] 352 primarily because of the remoteness of time." (*People v. Clair, supra,* 2 Cal.4th at p. 655.) In addition to this implicit questioning of *Castro*'s rationale by our Supreme Court in *Clair, supra,* and *Wheeler, supra,* and its explicit disavowal by this district in *Stewart* as mere "dicta," it has also been criticized as "so manifestly unworkable that it cannot be taken seriously by the trial and appellate courts" (*People v. Bautista* (1990) 217 Cal.App.3d 1, 8 [265 Cal.Rptr. 661] (conc. opn. of Kline, P. J.)), and has been construed into virtual desuetude by the adaptation of an abuse of discretion test on review. Finally, the federal Supreme Court, in *Green, supra,* has rejected *Castro*'s federal due process rationale.

The problem is obvious: A substantial body of authority has implicitly or explicitly questioned the precedential value of the *Castro* lead opinion in excluding impeachment by felonies not involving moral turpitude, despite the plain language of subdivision (f). "We recognize that [subdivision (f)] militates in favor of allowing a party to use *any prior felony conviction* to impeach any witness in any criminal proceeding." (*People v. Clair, supra,* 2 Cal.4th at p. 655, italics added.) Those authorities, however, have generally rationalized their holdings on the second prong of the lead opinion in *Castro*—whether the lower court's decision under section 352 to allow use of felonies involving moral turpitude constituted an abuse of discretion—*not* by applying the plain language of subdivision (f) to admit *all* felonies for such purpose, including those *not* involving moral turpitude. (Subd. (f).) This state of affairs, objectively viewed, seems questionable in light of the provisions of subdivision (f) itself. The resulting approach—of paying lip service to *Castro* while reaching diverse conclusions on an abuse of discretion analysis, and undercutting or ignoring the due process rationale of that case—has not yet been reexamined by our Supreme Court.[4] However, in the present case, the result we would reach on considering the application of subdivision (f) is the same we would reach under the abuse of discretion prong of the lead opinion's rationale in *Castro*.

### 2. *No Abuse of Discretion*

We find no abuse of discretion here since even under the *Castro* "moral turpitude" limitation—although there is no California case precisely on point holding that indecent exposure is a crime of "moral turpitude"—the trial court correctly ruled the prior conviction could be used for impeachment.

---

[4]In fact, our Supreme Court recently declined an opportunity to reconsider *Castro,* in a case concerning the admissibility of misdemeanor misconduct: "*Castro* implied that the moral turpitude distinction, despite its awkwardness, was the outer limit of logical pertinence to credibility. [Citation.] The People fail to persuade us that this conclusion should be reexamined." (*People v. Wheeler, supra,* 4 Cal.4th at p. 296, fn. 6.)

Under the *Castro* limitation, a felony conviction need not directly involve dishonesty to be admissible; the conviction involves the required "moral turpitude" if the felony is one which denotes " 'readiness to do evil' " and supports " 'the general proposition that [a previously convicted defendant] is of *bad character* and unworthy of credit.' " (38 Cal.3d at p. 314, quoting Justice Holmes's decision in *Gertz* v. *Fitchburg Railroad* (1884) 137 Mass. 77, 78, italics added by the *Castro* court.) This standard includes crimes which demonstrate *"moral depravity* other than dishonesty: child molestation, crimes of violence, torture, brutality and so on." (*People* v. *Castro*, *supra*, 38 Cal.3d at p. 315, italics added.)

The crime of felony indecent exposure of which appellant was convicted requires a showing that appellant *"willfully* and *lewdly"* exposed his genitals in a public place, or where there were other persons present to be offended. (Pen. Code, § 314, subd. 1, italics added.)[5] A conviction, thus, requires proof that a defendant *intentionally* exposed himself *in a public place*, or offended or annoyed *others*, in order to bring about sexual arousal in himself or others. (*In re Smith* (1972) 7 Cal.3d 362, 364-366 [102 Cal.Rptr. 335, 497 P.2d 807].) "Absent additional conduct intentionally directing attention to his genitals for sexual purposes, a person, as here, who simply sunbathes in the nude on an isolated beach does not 'lewdly' expose his private parts within the meaning of section 314." (*Id.* at p. 366.)

This requirement of lewdness, which is needed for a conviction of indecent exposure in California, supplies the assurance that a conviction for indecent exposure is one which necessarily involves moral turpitude. "The separate requirement that the intent of the actor be 'lewd' is an essential element of the offense . . . . [Citations.]" (*In re Smith, supra*, 7 Cal.3d at p. 365.) "Accordingly, a conviction . . . requires proof beyond a reasonable doubt that the actor not only meant to expose himself, but intended by his conduct to direct public attention to his genitals for purposes of sexual arousal, gratification, or affront." (*Id.* at p. 366.) This intentional and lewd desire to corrupt or offend others, for purposes of one's own sexual desires, may aptly be described as a state of moral turpitude.

A person who intentionally and lewdly affronts strangers and members of the general public, with unwelcome and offensive sexual displays of his genitals, is a person of "moral depravity" and " 'bad character' " with a " 'readiness to do evil.' " (See *People* v. *Castro*, *supra*, 38 Cal.3d at pp. 314-315.) We also observe in passing that indecent exposure only becomes a

---

[5]"Every person who willfully and lewdly . . . [¶] 1. Exposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby [is guilty.]" (Pen. Code, § 314, subd. 1.)

felony in California through recidivism, i.e., indecent exposure is only a felony if the defendant has previously been convicted of the same or a similar sexual offense. (Pen. Code, § 314.) Anyone guilty of recidivist sexual crimes is, by definition, a person with at least some " 'readiness to do evil.' "

Appellant wrongly relies upon a decision by the Court of Appeals of Virginia, *Chrisman* v. *Com.* (1986) 3 Va.App. 89 [348 S.E.2d 399]. *Chrisman* did not deal with impeachment for a felony requiring proof of lewdness and intentional exposure to others for the purposes of arousal; it dealt instead with a Virginia misdemeanor which apparently criminalized mere public nudity, since the court observed that Lady Godiva could have been convicted of this misdemeanor for riding through Coventry clad only in her hair—even though her motives were chaste and pure, since she did so as a form of medieval charitable fund raising. (*Id.* at p. 404.) Appellant, however, is clearly no Lady Godiva.

Also, California is not Virginia. As interpreted by our Supreme Court (*In re Smith*, *supra*, 7 Cal.3d at p. 366), the California felony in issue here is one which necessarily involves moral turpitude. There is no merit to appellant's contrary contention, whether based upon *Chrisman*, *supra*, or a strained reading of certain dicta in *People* v. *Rylaarsdam* (1982) 130 Cal.App.3d Supp. 1, 13-14 [181 Cal.Rptr. 723], which held a homosexual who displayed his penis to an undercover officer in a movie theater could be guilty of indecent exposure, despite a claim that the defendant reasonably believed the officer was also a homosexual who would welcome such a display. The *Rylaarsdam* court properly observed that people who lewdly and intentionally expose themselves to others in movie theaters, for the purpose of sexual arousal of themselves or others, do so at their peril; it is not a defense to claim that the exposer reasonably believed the victim would also become aroused by the display (and, in fact, the lewd intent to arouse the observer may be an element of the offense). *Rylaarsdam* does not support appellant's suggestion that indecent exposure is a strict liability offense, which does not entail lewd intent and moral turpitude. *In re Smith* holds directly to the contrary. (Cf. also *McKinley* v. *State* (1926) 33 Okla.Crim.App. 434 [244 P. 208] [An aged recluse who bathed near an open window which could be seen from an adjoining property did not violate a similar Oklahoma statute, since he was not guilty of "indulgence in lust" toward his neighbor.].)

Under California law, the offense of felony indecent exposure, a crime of moral turpitude, was properly used to impeach appellant's testimony. Nor do we perceive any abuse of discretion by the trial court; we note the conviction was not unduly remote or unduly recent; and the trial court did not allow the

jury to know that the prior felony conviction was for indecent exposure, the same crime charged here.[6] (See *People* v. *Mickle* (1991) 54 Cal.3d 140, 172 [284 Cal.Rptr. 511, 814 P.2d 290] [There was no abuse of discretion in the admission of a "sanitized" lewd conduct felony conviction for impeachment, where the jury was not told the nature of the offense.].)

B.  *Appellant's Remaining Contentions**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

III.  DISPOSITION

The judgment of conviction is affirmed. The sentence is corrected to show that the 30-day sentences imposed for lewd conduct are stayed. The clerk of the superior court shall forward an amended abstract of judgment to the Department of Corrections.

King, J., and Haning, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 13, 1993. Lucas, C. J., was of the opinion that the petition should be granted.

---

[6]Here, the jury learned only that appellant had been previously convicted of an unnamed felony involving moral turpitude.

*See footnote *ante*, page 687.