# Matter of Agustin ORTEGA-LOPEZ, Respondent

*Decided March 8, 2013*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The offense of sponsoring or exhibiting an animal in an animal fighting venture in violation of 7 U.S.C. § 2156(a)(1) (2006) is categorically a crime involving moral turpitude.

FOR RESPONDENT: Job Valverde, Esquire, Woodburn, Oregon

FOR THE DEPARTMENT OF HOMELAND SECURITY: Gina C. Emanuel, Assistant Chief Counsel

BEFORE: Board Panel: GRANT, MALPHRUS, and MULLANE, Board Members.

MALPHRUS, Board Member:

In a decision dated February 14, 2011, an Immigration Judge found the respondent removable, denied his application for cancellation of removal under section 240A(b) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b) (2006), and ordered him removed from the United States. The respondent has appealed from that decision. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who is present in the United States without being admitted or paroled. In 2009, he was convicted in a United States district court of sponsoring or exhibiting an animal in an animal fighting venture in violation of 7 U.S.C. § 2156(a)(1) (2006), for which he was sentenced to 1 year of probation.

The Department of Homeland Security ("DHS") charged the respondent with removability under section 212(a)(6)(A)(i) of the Act, 8 U.S.C. § 1182(a)(6)(A)(i) (2006). In proceedings before the Immigration Judge, the respondent conceded removability and sought cancellation of removal for nonpermanent residents under section 240A(b) of the Act. The Immigration Judge pretermitted the respondent's application, concluding that he is ineligible for relief under section 240A(b)(1)(C) of the Act because his

conviction was for an offense under section 212(a)(2) or section 237(a)(2) or (3) of the Act, 8 U.S.C. § 1227(a)(2) or (3) (2006).[1]

On appeal, the respondent asserts that his conviction for unlawful animal fighting in violation of 7 U.S.C. § 2156(a)(1) is not categorically for a crime involving moral turpitude and that he is therefore eligible for cancellation of removal. We disagree.

## II. ANALYSIS

"Under the categorical approach, we compare the statute of conviction to the generic definition of moral turpitude. If the statute bans only actions that involve moral turpitude, then it is categorically a crime involving moral turpitude." *Rohit v. Holder*, 670 F.3d 1085, 1088 (9th Cir. 2012). To determine that a statute describes conduct that is not categorically tupitudinous, there must be "a realistic probability, not a theoretical possibility," that the statute would be applied to prosecute conduct that falls outside the definition of moral turpitude. *Id.* at 1089 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (stating that to demonstrate that a statute criminalizes unintentional conduct, the alien "must at least point to his own case or other cases in which the state courts in fact did apply the statute" to conduct falling outside the generic definition)) (internal quotation marks omitted); *Matter of Cortes Medina*, 26 I&N Dec. 79, 82 (BIA 2013).

"Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Matter of Ajami*, 22 I&N Dec. 949, 950 (BIA 1999). To involve moral turpitude, a crime requires two essential elements: a culpable mental state and reprehensible conduct. *See Matter of Louissaint*, 24 I&N Dec. 754, 756-57 (BIA 2009) (stating that a "crime involving moral turpitude involves reprehensible conduct committed with some degree of scienter, either specific intent, deliberateness, willfulness, or recklessness" (citing *Matter of Silva-Trevino*, 24 I&N Dec. 687, 706 & n.5 (A.G. 2008))).[2]

---

[1] The Immigration Judge also concluded that even if the petty offense exception under section 212(a)(2)(A)(ii) of the Act applied, the respondent's conviction is for a crime involving moral turpitude under section 237(a)(2)(A)(i), and he is thus statutorily ineligible for cancellation of removal under section 240A(b)(1)(C). *See Matter of Cortez*, 25 I&N Dec. 301, 307 (BIA 2010). The respondent has not challenged this determination on appeal, so the issue is not before us. *Matter of Kochlani*, 24 I&N Dec. 128, 129 n.3 (BIA 2007).

[2] We have explained that, beyond these parameters, it is not realistic to develop a comprehensive definition that would encompass all crimes that involve moral turpitude and

(continued...)

Under 7 U.S.C. § 2156(a)(1), it is "unlawful for any person to knowingly sponsor or exhibit an animal in an animal fighting venture." The term "animal fighting venture" is defined to include any event that involves a fight between at least two animals that is conducted "for purposes of sport, wagering, or entertainment." § 2156(g)(1). However, the use of animals for hunting activities is specifically excluded from the definition. An "animal" means any live bird or mammal, except man. § 2156(g)(5). A violation of § 2156(a)(1) is punishable by imprisonment for not more than 1 year. § 2156(e).

We conclude that animal fighting under 7 U.S.C. § 2156(a)(1) is categorically a crime involving moral turpitude under the immigration laws because the commission of this offense requires a culpable mental state and involves reprehensible conduct. *See Matter of Cortes Medina*, 26 I&N Dec. at 82. The offender must "knowingly" sponsor or exhibit an animal for fighting, and crimes that are committed knowingly can satisfy the scienter requirement. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 917 (9th Cir. 2009) (en banc) (affirming the Board's determination that "DUI offenses committed with the knowledge that one's driver's license has been suspended or otherwise restricted are crimes involving moral turpitude"); *see also, e.g.*, *Gill v. INS*, 420 F.3d 82, 89 (2d Cir. 2005) ("Crimes committed knowingly or intentionally generally have been found, on the categorical approach, to be CIMTs.").

This crime also clearly involves reprehensible conduct. As the Immigration Judge explained in his detailed decision, animal fighting, unlike hunting or racing, is a spectacle of animal suffering engaged in purely for entertainment, "the entire purpose of which is the intentional infliction of harm or pain on sentient beings that are compelled to fight, often to the death. The spectacle of forcing animals to cause each other extreme pain or death necessarily appeals to prurient interests." *See generally United States v. Stevens*, 130 S. Ct. 1577, 1601-02 (2010) (Alito, J., dissenting) (discussing the cruel, inhumane dog fighting subculture and its devastating and deadly effects on the animals involved); *United States v. Stevens*, 533 F.3d 218, 245 (3d Cir. 2008 (Cowen, J., dissenting) ("Dog fighting itself is a grisly business

---

(...continued)
exclude those that do not. *Matter of Cortes Medina*, 26 I&N Dec. at 82. This case illustrates the difficulty in applying a narrow, static definition because of the evolving nature of what conduct society considers to be contrary to accepted rules of morality as reflected in criminal statutes. Notably, animal fighting was not a Federal offense until 1976. *See United States v. Gibert*, 677 F.3d 613, 618 (4th Cir. 2012) (noting that "Congress' prohibition of animal fighting is a relatively recent addition to the Animal Welfare Act"). We have not previously addressed whether this offense is a crime involving moral turpitude, and we are not aware of any circuit court decision that has.

in which two dogs either trained specifically for the purpose or maddened by drugs and abuse are set upon one another and required to fight, usually to the death of at least one and frequently both animals." (quoting H.R. Rep. No. 94-801, at 9 (1976), *reprinted in* 1976 U.S.C.C.A.N. 758, 761, 1976 WL 13854 (Leg. Hist.) (internal quotation marks omitted))). Thus, animal fighting is far from a victimless crime. It is a form of animal cruelty that involves inherently base and depraved conduct by the people involved in it. *See generally United States v. Hackman*, 630 F.3d 1078, 1084 (8th Cir. 2011) (concluding that "the ordinary cruelty inherent in dog fighting" justified the defendant's base offense level for sentencing purposes related to his plea to violating § 2156).

In enacting § 2156 in 1976 as a new section of the broader Animal Welfare Act of 1966, Congress determined that it was in the national interest to further regulate animals and activities in interstate and foreign commence and "to protect the human values of this great Nation from the subversion of dehumanizing activities." *United States. v. Gibert*, 677 F.3d 613, 619-20 (4th Cir. 2012) (quoting H.R. Rep. No. 94-801, at 10) (internal quotation marks omitted). The legislative history supporting § 2156 expressly states that the practice of dogfighting is "dehumanizing, abhorrent, and utterly without redeeming social value." H.R. Rep. No. 94-801, at 10. When it passed the animal fighting statute, Congress initially focused its concern on dogfighting. *United States. v. Gibert*, 677 F.3d at 619. The bill, as introduced, "would have prohibited fighting only between live dogs or other mammals," but it was amended during the process to include cockfighting. *Id.* at 619 n.6 (quoting H.R. Rep. 94-801, at 10) (internal quotation mark omitted).

Cockfighting involves "pitting two cocks, usually equipped with sharp blades on their legs, in a fight against each other." *United States v. Land, Winston County*, 221 F.3d 1194, 1196 (11th Cir. 2000); *see also State v. Bonilla*, 28 A.3d 1005, 1011 n.6 (Conn. App. Ct. 2011) (citing legislative history detailing testimony explaining that during cockfights, birds are forced to fight until the death, that some cockfights can last 2 hours, and that the birds are thrown into a pit until a winner is established by death); Nancy R. Hoffman & Robin C. McGinnis, *2007-2008 Legislative Review*, 15 Animal L. 265, 278-79 (2009) (stating that cockfighting "often involves 'breeding birds for viciousness, drugging them to heighten aggression, and fitting their legs with razor-sharp knives or gaffs, which resemble curved ice picks'" (quoting a March 7, 2008, document of the Humane Society of the United States)).[3]

---

[3] The consensus against cockfighting has not only been a matter of preventing cruel and inhumane treatment of animals but also of preventing the spread of costly and dangerous diseases to human beings, including the "bird flu." *United States v. Gibert*, 677 F.3d at 620 (citing 153 Cong. Rec. S451-52 (daily ed. Jan. 11, 2007) (statement of Sen. Cantwell)).

"The animal fighting statute has been amended and expanded since its passage in 1976 to reflect the increasing national consensus against this activity." *United States. v. Gibert*, 677 F.3d at 620; *see also Humane Society of U.S. v. U.S. Postal Service*, 609 F. Supp. 2d 85, 92 (D.D.C. 2009) ("Congress enacted § 2156 of the Animal Welfare Act, and has repeatedly amended it over the years, to assure the humane treatment of animals and to protect animals from being abused in illegal animal fights."). Among the May 2007 amendments to the Animal Welfare Act, Congress made it "unlawful for any person to knowingly sell, buy, transport, or deliver in interstate or foreign commerce a knife, a gaff, or any other sharp instrument attached, or designed or intended to be attached, to the leg of a bird for use in an animal fighting venture." 7 U.S.C. § 2156(e) (Supp. I 2007); *see also* Pub. L. No. 110-22, § 3(3), 121 Stat. 88, 88 (2007).

Further, today all 50 States and the District of Columbia have laws prohibiting both dog fighting and cockfighting. *See United States v. Stevens*, 130 S. Ct. at 1583 (dog fighting); *United States v. Gibert*, 677 F.3d at 621 n.8 (cockfighting). Thus, as the Immigration Judge stated, the "sweeping prohibitions [against animal fighting in the United States] show that we, as a society, find animal fighting morally reprehensible, and thus morally turpitudinous."

Because the respondent is seeking relief from removal, he bears the burden of showing that a realistic probability exists that the criminal statute under which he was convicted has actually been applied, either in his case or generically, to conduct that did not involve moral turpitude. *See* section 240(c)(4)(B) of the Act, 8 U.S.C. § 1229a(c)(4)(B) (2006); *Young v. Holder*, 697 F.3d 976, 988-89 (9th Cir. 2012) (stating that an alien seeking cancellation of removal bears the burden of demonstrating that none of his prior convictions bars him from eligibility); *see also Gonzales v. Duenas-Alvarez*, 549 U.S. at 193; *Matter of Silva-Trevino*, 24 I&N Dec. at 703 n.4. The respondent has cited no published or unpublished decision that has applied 7 U.S.C. § 2156(a)(1) to conduct that is not morally turpitudinous, and we are not aware of any. Nor has he presented any evidence that the Federal court applied the statute to his case in such a manner. *Matter of Cortes Medina*, 26 I&N Dec. at 82 (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. at 193).

Based on the foregoing analysis, we conclude that knowingly sponsoring or exhibiting animals in an animal fight for sport, wager, or entertainment in violation of 7 U.S.C. § 2156(a)(1) necessarily involves conduct that is "base, vile, or depraved, and contrary to the accepted rules of morality" and therefore is categorically a crime involving moral turpitude under the immigration laws.

*Matter of Ajami*, 22 I&N Dec. at 950.[4]  Accordingly, the respondent's appeal will be dismissed.

   **ORDER:**  The appeal is dismissed.

---

[4] Although it is not disputed that this case involved cockfighting, our determination that a violation of 7 U.S.C. § 2156(a)(1) is categorically a crime involving moral turpitude is not dependent on the type of animal involved.  *See* § 2156(g)(5).