# Matter of Alfonso CORTES MEDINA, Respondent

*Decided January 8, 2013*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The offense of indecent exposure in violation of section 314(1) of the California Penal Code, which includes the element of lewd intent, is categorically a crime involving moral turpitude.

FOR RESPONDENT: Tucker H. Sandler, Esquire, Los Angeles, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Ingrid Abrash, Senior Attorney

BEFORE: Board Panel: GRANT, MALPHRUS, and MULLANE, Board Members.

MALPHRUS, Board Member:

In a decision dated June 30, 2010, an Immigration Judge granted the respondent's motion to terminate the proceedings. The Department of Homeland Security ("DHS") has appealed from that decision. Through counsel, the respondent has filed a response in opposition to the appeal.[1] The DHS's appeal will be sustained, the proceedings will be reinstated, and the record will be remanded to the Immigration Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who entered the United States as a lawful permanent resident on August 2, 1980. On June 12, 1996, he was convicted of indecent exposure in violation of section 314(1) of the California Penal Code. He was placed on probation for 3 years and was ordered to attend sex counseling. When the respondent violated probation in 1997, it was revoked and he was sentenced on May 21, 1998, to serve 180 days in jail. On February 11, 1998, the respondent was again convicted of indecent

---

[1] On April 12, 2011, we requested supplemental briefing to obtain clarification from the parties about their positions regarding the application of *Matter of Silva-Trevino*, 24 I&N Dec. 687 (A.G. 2008), and *Nunez v. Holder*, 594 F.3d 1124 (9th Cir. 2010), to this case. Both parties submitted supplemental briefs.

exposure in violation of section 314(1) and was placed on probation for 3 years, including 180 days in jail.

In 2001, the respondent pled guilty to annoying or molesting a child under the age of 18 in violation of section 647.6(a) of the California Penal Code, although he originally was charged with another violation of section 314(1). He was placed on 5 years of probation, including 270 days in jail. On October 25, 2007, he was convicted on a nolo contendere plea of indecent exposure with priors in violation of section 314(1), and he was sentenced to 16 months in prison.

In July 2008, the DHS filed a notice to appear charging that the respondent is removable under section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(ii) (2006), as an alien who at any time after entry has been convicted of two or more crimes involving moral turpitude. On November 3, 2008, the Immigration Judge sustained the factual allegations and the charge of removability, finding that the respondent had been convicted of multiple crimes involving moral turpitude.[2]

At a subsequent hearing, the Immigration Judge considered the intervening decision of the United States Court of Appeals for the Ninth Circuit in *Nunez v. Holder*, 594 F.3d 1124 (9th Cir. 2010), which held that indecent exposure under section 314(1) of the California Penal Code is not categorically a crime involving moral turpitude. Based on that decision, the Immigration Judge found that the DHS had not established that the respondent's convictions for indecent exposure were for crimes involving moral turpitude under the categorical approach. The Immigration Judge then determined that the record of conviction did not illuminate the facts that formed the basis of the respondent's guilty plea. He therefore concluded that the respondent's convictions were not for crimes involving moral turpitude under the modified categorical approach, and he did not proceed to the third step of the analysis outlined in *Matter of Silva-Trevino*, 24 I&N Dec. 687 (A.G. 2008). The Immigration Judge granted the respondent's motion to terminate, and the DHS has appealed.

We need not consider the DHS's initial argument challenging the Immigration Judge's application of *Matter of Silva-Trevino* because we agree with its alternative argument that the offense of indecent exposure under section 314(1) of the California Penal Code is categorically a crime involving moral turpitude. In reaching this conclusion, we reject the respondent's argument that because of the Ninth Circuit's decision in *Nunez v. Holder*, we

---

[2] The respondent was also charged under section 237(a)(2)(E)(i) of the Act as an alien who has been convicted of child abuse. The DHS has not challenged the Immigration Judge's finding that this charge was not sustained.

do not have authority to consider whether indecent exposure under California law is categorically a crime involving moral turpitude.

## II.  ANALYSIS

The Supreme Court has held that where a statute is silent or ambiguous, an agency's interpretation should be given deference if it is based on a permissible construction of the statute. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  The Court has emphasized that the *Chevron* principle of deference must be applied to an agency's interpretation of ambiguous statutory provisions, even where a court has previously issued a contrary decision and believes that its construction is the better one, provided that the agency's interpretation is reasonable. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").

The Ninth Circuit has described the phrase "crime involving moral turpitude" as quintessentially ambiguous and has expressly held that it is appropriate to accord *Chevron* deference to our precedent decisions on whether a particular offense falls within the definition of that term. *Marmolejo-Campos v. Holder*, 558 F.3d 903, 909-12 (9th Cir. 2009) (en banc); *accord Bobadilla v. Holder*, 679 F.3d 1052, 1057 (8th Cir. 2012).  In *Nunez v. Holder*, 594 F.3d at 1130, the court recognized that the question whether a violation of section 314(1) of the California Penal Code constitutes a crime involving moral turpitude concerned the application of an inherently ambiguous term within the Act.  However, because the Board decision that the *Nunez* court reviewed was an unpublished opinion "that [did] not rely on prior precedential decisions," our holding was only afforded deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *Id.* at 1133.  Therefore, we now further address this question and respectfully conclude that based on the foregoing rulings of the Supreme Court and the Ninth Circuit, we have the authority under *Chevron* to determine whether a violation of section 314(1) categorically constitutes a crime involving moral turpitude, and we hold that it does.[3]

---

[3] In reaching this conclusion we recognize that the boundaries for invoking *Brand X* are not necessarily settled. We also understand that the unpublished Board decision the *Nunez* court reviewed was not entitled to *Chevron* deference, and we therefore remedy that deficiency by issuing this decision.

"Under the categorical approach, we compare the statute of conviction to the generic definition of moral turpitude. If the statute bans only actions that involve moral turpitude, then it is categorically a crime involving moral turpitude." *Rohit v. Holder*, 670 F.3d 1085, 1088 (9th Cir. 2012) (citation omitted). To determine that a statute describes conduct that is not categorically turpitudinous, there must be "a realistic probability, not a theoretical possibility" that the State would apply the statute to prosecute conduct that falls outside the definition of moral turpitude. *Id.* at 1089 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (stating that to demonstrate that a statute criminalizes unintentional conduct, the alien "must at least point to his own case or other cases in which the state courts in fact did apply the statute" to conduct falling outside the generic definition)) (internal quotation marks omitted); *see also Matter of Silva-Trevino*, 24 I&N Dec. at 689-90.

Under long-standing case law, an offense must have two essential elements to constitute a crime involving moral turpitude: a culpable mental state and reprehensible conduct. *See Matter of Louissant*, 24 I&N Dec. 754, 756-57 (BIA 2009) (stating that a "crime involving moral turpitude involves reprehensible conduct committed with some degree of scienter, either specific intent, deliberateness, willfulness, or recklessness"). "Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Matter of Ajami*, 22 I&N Dec. 949, 950 (BIA 1999).

Beyond these parameters, there is not a single comprehensive definition of a crime involving moral turpitude. In our view, a definition that would encompass all crimes that involve moral turpitude and exclude those that do not is unrealistic given the nature of this broad legal term and the myriad Federal and State statutes potentially at issue. However, we agree that it is important for the Board to clarify when criminal conduct involving indecent exposure is properly classified as turpitudinous.

In cases involving questions of moral turpitude, including those dealing with indecent exposure and lewd behavior, we have analyzed the underlying conduct prohibited by the statute of conviction. We have long held that indecent exposure is not inherently turpitudinous in the absence of lewd or lascivious intent. The word "lewd" is defined as "obscene or indecent." *Black's Law Dictionary* 927 (8th ed. 2004).

In *Matter of P-*, 2 I&N Dec. 117, 121 (BIA 1944), we concluded that the alien's indecent exposure of his person to children did not involve moral turpitude because there was no indication whether the exposure was "to arouse the sexual desires of the parties concerned or with a lewd or lascivious intent, *or whether it was because of a negligent disregard of the children's presence*

*occasioned by physical necessity*." Similarly, in *Matter of Mueller*, 11 I&N Dec. 268, 270 (BIA 1965), the indecent exposure statute under which the alien was convicted required only a knowing exposure of a sex organ, so the mere exposure was unlawful, "regardless of the actor's intention." Because the offense did not require "any intent whatsoever," it was not a crime involving moral turpitude. *Id.*; *see also Matter of H-*, 7 I&N Dec. 301 (BIA 1956). Shortly after *Mueller*, we decided that renting a room with knowledge that it would be used for prostitution or lewdness in violation of Florida law was a crime involving moral turpitude. *Matter of Lambert*, 11 I&N Dec. 340 (BIA 1965).

The key difference between cases like *Matter of P-* and *Matter of Mueller* on the one hand and *Matter of Lambert* on the other is lewdness. In our view, lewd intent brings the offense of indecent exposure within the definition of a crime involving moral turpitude. *See People v. Ballard*, 16 Cal. Rptr. 2d 624, 630 (Cal. Ct. App. 1993) ("Th[e] intentional and lewd desire to corrupt or offend others, for purposes of one's own sexual desires, may aptly be described as a state of moral turpitude."). This is what makes it "base, vile, or depraved, and contrary to the accepted rules of morality." *Matter of Ajami*, 22 I&N Dec. at 950. We therefore hold that for the offense of indecent exposure to be considered a crime involving moral turpitude under the immigration laws, the statute prohibiting the conduct must require not only the willful exposure of private parts but also a lewd intent. *See Matter of Lambert*, 11 I&N Dec. at 342; *Matter of Mueller*, 11 I&N Dec. at 270; *Matter of P-*, 2 I&N Dec. at 121.

With this background in mind, we turn to section 314(1) of the California Penal Code, which provides that "[e]very person who *willfully and lewdly* . . . [e]xposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby . . . is guilty of a misdemeanor." (Emphasis added.) To be convicted under this statute, therefore, a defendant must intentionally expose himself "lewdly" to others who are likely to be offended or annoyed. *People v. Carbajal*, 8 Cal. Rptr. 3d 206, 208 (Cal. Ct. App. 2003).

California courts have affirmed convictions under section 314(1), not based solely on exposure, but because the defendant had the requisite obscene or indecent intent at the time of the offense. *In re Smith*, 497 P.2d 807, 809, 810 (Cal. 1972) ("The separate requirement that the intent of the actor be 'lewd' is an essential element of the offense . . . ."); *see also, e.g.*, *People v. Rehmeyer*, 24 Cal. Rptr. 2d 321 (Cal. Ct. App. 1993) (upholding the conviction of a nude, aroused male who was standing over the bed of 16-year-old girl); *People v. Ballard*, 16 Cal. Rptr. 2d at 630 (holding that a conviction for indecent exposure involving masturbation near women in movie theater was for a crime involving moral turpitude). Mere nudity, such as nude

sunbathing, involves exposure alone and therefore does not meet this lewdness requirement. *In re Smith*, 497 P.2d at 810 ("[A] person does not expose his private parts 'lewdly' within the meaning of [the statute] unless his conduct is sexually motivated."). Accordingly, the conviction of a juvenile who engaged in "mooning" (exposing his bare buttocks) to oncoming traffic to annoy and affront others, but not for purposes of sexual gratification, was overturned because he did not act with lewd intent. *In re Dallas W*, 102 Cal. Rptr. 2d 493 (Cal. Ct. App. 2000).[4]

We conclude that a person convicted of indecent exposure in violation of section 314(1) has committed a crime involving moral turpitude because a finding of lewdness is necessary for a conviction. *See People v. Ballard*, 16 Cal. Rptr. 2d at 630 ("This requirement of lewdness, which is needed for a conviction of indecent exposure in California, supplies the assurance that a conviction for indecent exposure is one which necessarily involves moral turpitude."). In this regard we note that the Ninth Circuit recently held that disorderly conduct involving solicitation of prostitution under section 647(b) of the California Penal Code, which states that prostitution includes "any lewd act between persons for money," involves conduct that is within the definition of a crime involving moral turpitude. *Rohit v. Holder*, 670 F.3d at 1088-90 (applying *Skidmore* deference to conclude that violation of section 647(b) is categorically a crime involving moral turpitude).

The court in *Nunez v. Holder* stated that indecent exposure under California law was not the type of crime normally considered to involve moral turpitude because it could "be committed without any intention of harming anyone, . . . need not result in actual harm, and . . . does not necessarily involve a protected class of victim." 594 F.3d at 1135. We respectfully consider this definition of moral turpitude to be too narrow. As noted in *Nunez*, there are two types of cases prosecuted under section 314(1) that merit discussion in assessing whether a violation of the statute is categorically a crime involving moral turpitude.

In the first category, which concerns cases involving "sexual affront," is *People v. Archer*, 119 Cal. Rptr. 2d 783 (Cal. Ct. App. 2002). That case involved a road rage incident where a male driver angrily lifted himself up in

---

[4] Notably, other States have drawn a similar distinction and found that public exposure of private parts is insufficient for an indecent exposure conviction, which also requires a lewd or indecent intent. For example, as explained in *Polk v. State*, 865 S.W.2d 627, 630 (Tex. Ct. App. 1993), which interpreted section 21.08 of the Texas Penal Code Annotated, "Nude swimmers and pranksters may offend others by their nudity with no intent to sexually arouse either themselves or their observers." Such individuals are not guilty of indecent exposure because an essential element for a conviction is the "intent to arouse or gratify sexual desire." *Id*.

his vehicle to expose himself to a frightened female driver while shouting a sexual expletive at her. The California appellate court determined that the defendant's conduct supported an indecent exposure conviction because it involved lewd intent. Contrary to *Nunez v. Holder*, 594 F.3d at 1138, we do not consider such an offense to be a mere "tasteless prank[]."[5] The manner and circumstances in which the defendant in *Archer* exposed himself clearly involved lewdness, which under our definition is a crime involving moral turpitude. *See In re Smith*, 497 P.2d at 810 ("[A] conviction [for indecent exposure] requires proof beyond a reasonable doubt that the actor not only meant to expose himself, but intended by his conduct to direct public attention to his genitals for purposes of sexual arousal, gratification, or affront.").

The second category of cases involves "nude dancing." In *People v. Conway*, 162 Cal. Rptr. 877 (Cal. App. Dep't Super. Ct. 1979), a California appellate court affirmed a conviction under section 314(1) for nude dancing in a bar. The precise facts of the case are not well developed, but there is no indication that the court undermined the lewdness requirement of section 314(1) in making its decision.

As discussed above, there is a difference between simple public nudity and indecent exposure with a lewd intent. In this regard, we find instructive the California Supreme Court's narrow interpretation of lewd behavior in a case involving a defendant who fell asleep at a public beach. *In re Smith*, 497 P.2d 807. The court stated there that "[a]bsent additional conduct intentionally directing attention to his genitals for sexual purposes, a person, as here, who simply sunbathes in the nude on an isolated beach does not 'lewdly' expose his private parts within the meaning of § 314." *Id.* at 810; *see also People v. Massicot*, 118 Cal. Rptr. 2d 705 (Cal. Ct. App. 2002) (reversing a conviction for indecent exposure because the defendant did not display his entire unclothed body); *In re Dallas*, 102 Cal. Rptr. 2d 493 (holding that "mooning" oncoming traffic without lewd intent was not prohibited by section 314(1)). Putting aside the question whether there is a realistic probability of prosecution for nude dancing under section 314(1), we conclude that only a conviction that includes lewd behavior as defined by the California Supreme Court would involve moral turpitude under our definition.

In regard to a realistic probability of prosecution under section 314(1), we note that *People v. Conway* was expressly disapproved of by the

---

[5] *Nunez* also referenced an unpublished decision that upheld an indecent exposure conviction of a 12-year-old boy in juvenile court after he approached two young female classmates, gained their attention, and then exposed himself. *People v. Lionel M.*, No. H031030, 2007 WL 2924052 (Cal. Ct. App. Oct. 9, 2007). The California appellate court explained that under the circumstances of that case, where the offender targeted his two classmates, he had engaged in lewd conduct.

California Supreme Court in 1982 in *Morris v. Municipal Court*, 652 P.2d 51, 59 n.13 (Cal. 1982).[6]  In addition, the respondent has not cited any published or unpublished California decision issued since *Nunez* that has applied section 314(1) to nude dancing or to any other conduct that is not morally turpitudinous, and we are not aware of any.  Nor has the respondent presented any evidence that California applied the statute to him in such a manner.  *See Gonzales v. Duenas-Alvarez*, 549 U.S. at 193.

In summary, we see no "realistic probability" of a conviction in California under section 314(1) for nude dancing or other conduct that does not involve moral turpitude.  In the case before us, the respondent has not met his burden of establishing that under current law a realistic probability exists that California would apply the statute, either in his case or generically, to conduct that would not involve moral turpitude.  *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183.  Accordingly, we respectfully invoke the authority of *Brand X* and conclude that a violation of section 314(1) of the California Penal Code is categorically a crime involving moral turpitude for purposes of the immigration laws.  *See Marmolejo-Campos v. Holder*, 558 F.3d at 909-12; *see also Garfias-Rodriguez v. Holder*, No. 09-72603, 2012 WL 5077137 (9th Cir. Oct. 19, 2012) (en banc) (adopting the Board's subsequent interpretation of an ambiguous immigration statute as reasonable, even though it was inconsistent with prior circuit authority).[7]

The respondent also argues that the DHS waived any challenge to the Immigration Judge's decision, which applied *Nunez v. Holder* to his case, because the DHS did not raise this issue at the hearing.  However, only the Board, not the Immigration Judge, has the authority to invoke *Brand X*, so there was no reason for this issue to be raised below.  When we asked the parties to clarify their positions regarding the application of *Matter of Silva-Trevino* and *Nunez v. Holder* through supplemental briefing, the DHS encouraged us to apply *Brand X* to the respondent's indecent exposure conviction.

---

[6] In explaining the limitations of relying on *Conway* to establish a realistic probability of prosecution under section 314(1) for nude dancing in California, the dissenting judge in *Nunez* noted that there was no indication of any conviction for nude dancing pursuant to that statute in the three decades since *Morris* was decided, and he explained that California law currently permits and regulates nude dancing.  *Nunez v. Holder*, 594 F.3d at 1145-47 (Bybee, J., dissenting).

[7] We need not reach any of the respondent's other arguments regarding the application of *Matter of Silva-Trevino*, 24 I&N Dec. 687, because we do not proceed beyond the categorical approach to resolve this case and therefore do not apply the *Silva-Trevino* framework.

## III.  CONCLUSION

For the reasons discussed above, we conclude that the respondent has been convicted of two crimes involving moral turpitude based on his multiple convictions for violations of section 314(1) of the California Penal Code and that he is therefore removable under section 237(a)(2)(A)(ii) of the Act. Accordingly, the DHS's appeal will be sustained.  The record will be remanded  to the Immigration Judge to permit the respondent to pursue any form of relief for which he may be eligible.

**ORDER:**  The appeal of the Department of Homeland Security is sustained, the decision of the Immigration Judge is vacated, and the removal proceedings are reinstated.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.