Filed 8/25/15  P. v. Maldonado CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067477 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF1204393) |
| JOSE MALDONADO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Patrick F. Magers, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Gerald A. Engler, Chief Assistant Attorneys General, Julie L. Garland, Assistant Attorney General, William M. Wood, A. Natasha Cortina, Marvin E. Mizell and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jose Maldonado of five counts of possessing stolen property, two counts each of burglary, possessing a completed check with intent to defraud, passing or attempting to pass an altered check, and one count of resisting or delaying a peace officer. The jury also found true an allegation that Maldonado committed the crimes while he was released from custody. Maldonado appeals, contending: (1) the trial court abused its discretion by failing to exclude or sanitize evidence of his prior convictions, (2) insufficient evidence supported his convictions on three counts of possessing stolen property, one count of burglary, one count of passing or attempting to pass a fraudulent check, and one count of possessing a completed check with the intent to defraud, (3) he received ineffective assistance when his attorney told the jury that Maldonado was guilty of certain charges, (4) cumulative error warrants reversal, and (5) Proposition 47, passed by voters on November 4, 2014, requires we reduce his convictions on seven counts to misdemeanors and remand the matter for resentencing. We reject Maldonado's arguments and affirm.

BACKGROUND

This case involves a series of theft-related offenses that occurred between September and November 2012. (Undesignated date references are to the year 2012.) In sum, Maldonado possessed stolen mail, checks and a money order, cashed or attempted to cash fraudulent checks at two banks, and attempted to flee from an officer after one of the bank incidents. We summarize the relevant facts below as they pertain to each of Maldonado's arguments.

2

## DISCUSSION

### I. *Prior Offense Evidence*

A. Background

Maldonado had five prior felony convictions, including assault with a deadly weapon in 1996, assault on a peace officer in 2001, making a criminal threat in 2002, vehicle theft in 2005, and theft of personal property in 2010.

Maldonado's counsel informed the court that Maldonado intended to testify on his own behalf and requested that the court exclude evidence of Maldonado's prior convictions under Evidence Code section 352. Defense counsel argued the prior convictions were prejudicial and remote in time. The People opposed Maldonado's request, contending the jury was entitled to hear about crimes involving moral turpitude and the evidence was relevant to evaluate Maldonado's veracity.

The court excluded evidence of the 2001 conviction for assault on a peace officer, finding it was more prejudicial than probative. The court found the remaining convictions were relevant to determining Maldonado's veracity. In regard to the 1996 conviction for assault with a deadly weapon, the court found that although it was remote in time, it showed "a pattern of criminal conduct bearing on veracity itself."

During his direct testimony, Maldonado acknowledged his prior convictions. He testified that he pleaded guilty in 2002 to making a criminal threat. Maldonado described the crime as an incident in which he told a person to "pay me my money or I'm going to kick your ass." Maldonado also testified that he pleaded guilty to an assault in 1996, receiving a stolen vehicle in 2005, and petty theft with a prior in 2010. Maldonado

3

attempted to explain that he was not convicted of those crimes beyond a reasonable doubt because he pleaded guilty rather than going to trial.

On cross-examination, the prosecutor questioned Maldonado about his prior convictions. When asked about his 1996 assault conviction, Maldonado stated he did not remember it because it was years ago. He went on to state that the only assault he had ever been convicted of was on an officer who he described as a "crooked cop." When referring to Maldonado's conviction for making a criminal threat, the prosecutor repeatedly called the crime "making terrorist threats." At one point, the prosecutor asked, "And you want this jury to believe you despite the fact that you were convicted of making terrorist threats; is that right?" Defense counsel objected on the grounds that the question was argumentative and the court sustained the objection.

B.  Analysis

Maldonado argues the trial court abused its discretion by failing to exclude or sanitize evidence of his prior convictions to impeach his credibility. We reject this argument.

"Any prior felony conviction of any person in any criminal proceeding . . . shall subsequently be used without limitation for purposes of impeachment . . . in any criminal proceeding." (Cal. Const., art. 1, § 28, subd. (f)(4).) "A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931.) Because the trial court's discretion to admit or exclude impeachment evidence is broad, a reviewing court ordinarily upholds

4

the trial court's exercise of discretion. (*Id*. at p. 932; *People v. Hinton* (2006) 37 Cal.4th 839, 887.)

"When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*People v. Clark*, *supra*, 52 Cal.4th at p. 931.) To minimize any prejudicial effect of admission of evidence regarding a witness's prior felony conviction, a trial court may sanitize that evidence (e.g., by excluding the title or other details of the prior felony conviction). (*People v. Mickle* (1991) 54 Cal.3d 140, 172; *People v. Gray* (2007) 158 Cal.App.4th 635, 641-642; *People v. Ballard* (1993) 13 Cal.App.4th 687, 698, fn. 6.)

Here, Maldonado does not dispute that his prior offenses are the types of crimes that are admissible for impeachment purposes. As the People point out, making criminal threats and crimes of violence involve moral turpitude. (*People v. Thornton* (1992) 3 Cal.App.4th 419, 424; *People v. Hinton*, *supra*, 37 Cal.4th at p. 888.) Additionally, theft-related crimes reflect on a witness's honesty. (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925.)

The trial court properly exercised its discretion in admitting the prior offenses. In doing so, the court considered whether the crimes reflected on Maldonado's veracity and their remoteness in time. Ultimately, the court excluded the offense involving assault on a peace officer as more prejudicial than probative but allowed the remainder of the

5

offenses, finding they showed "a pattern of criminal conduct bearing upon veracity itself."  Moreover, admission of the prior offenses did not discourage Maldonado's decision to testify as he went forward with testifying on his own behalf.  We find no abuse of discretion in the trial court's ruling.

Maldonado contends the impeachment evidence was prejudicial because his defense was largely based on "his credibility in explaining the circumstances of each of the incidents and his intent and understanding of his actions."  Thus, he argues the evidence created a risk that the jury would determine that since he was a thief before, he must be guilty of the crimes in this case.  We acknowledge the risk of prejudice resulting from prior offense evidence even if it is for the limited purpose of impeachment.  (*People v. Gray*, *supra*, 158 Cal.App.4th at p. 641.)  "The Evidence Code, however, entitles the People to present evidence of the credibility of any witness, including a criminal defendant [citation] and '[n]o witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity.' "  (*Ibid*.)  Further, the danger that the jury might misuse the prior offense evidence was reduced because the court instructed the jurors that they could consider the prior offenses only in evaluating credibility, a conviction does not necessarily destroy or impair a witness's credibility, and it was up to the jury to decide the weight of the prior convictions and whether they made Maldonado less believable.  Defense counsel also told the jury in closing argument that it could consider Maldonado's prior felonies only in evaluating his credibility and not for determining whether Maldonado committed the crimes in this case.

6

Maldonado also contends the court should have "sanitized" his prior offenses by allowing the jury to only hear that he was convicted of crimes involving moral turpitude, rather than that the crimes were theft-related offenses or "terrorist threat[s]." Maldonado did not request that the trial court sanitize the prior offenses and thus forfeited the contention on appeal. (See *People v. Partida* (2005) 37 Cal.4th 428, 433-435.) Even if the issue was preserved, however, we conclude sanitation would not have made a difference. There was nothing particularly inflammatory in Maldonado's testimony about his prior crimes and although some of the offenses were theft-related, they did not involve facts similar to the crimes in this case. Specifically, based on Maldonado's testimony, the prior offenses did not relate to stolen mail or cashing fraudulent checks.

Lastly, Maldonado argues the prosecutor's characterization of his 2002 criminal threat conviction as a "terrorist threat" was especially prejudicial due to heightened concerns and news coverage regarding terrorists. We reject this argument as there is no reasonable probability that the jury concluded Maldonado was a terrorist. Maldonado explained that the crime was an incident in which he told a person to "pay me my money or I'm going to kick your ass." Moreover, the crime of making a criminal threat under Penal Code section 422 is often referred to as a "terrorist threat" and, in this case, both the prosecutor and defense counsel referred to Maldonado's crime with that designation. Thus, the prosecutor's reference to "terrorist threats" did not improperly taint the jury's view of Maldonado's character.

Based on the foregoing, we reject Maldonado's argument that the court abused its discretion in admitting or failing to sanitize his prior offenses for impeachment.

7

## II. *Sufficiency of the Evidence*

A. Standard of Review

In reviewing the sufficiency of the evidence to support a conviction, we evaluate the whole record to ascertain whether there is substantial evidence to support the verdict. (*People v. Cole* (2004) 33 Cal.4th 1158, 1212.) We "'view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence'" to determine whether a reasonable trier of fact could find guilt beyond a reasonable doubt. (*People v. Young* (2005) 34 Cal.4th 1149, 1175; *People v. Cole*, at pp. 1212-1213.) The same standard applies when the prosecution relies primarily on circumstantial evidence. (*People v. Young*, at p. 1175.)

Substantial evidence includes circumstantial evidence and the reasonable inferences the evidence allows. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; *People v. Pierce* (1979) 24 Cal.3d 199, 210.) "'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court, which must be convinced of the defendant's guilt beyond a reasonable doubt. "'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.'"'" (*People v. Palmore* (2000) 79 Cal.App.4th 1290, 1298; see also *People v. Thomas* (1992) 2 Cal.4th 489, 514.) Thus, "'where the jury rejects the hypothesis pointing to innocence by its verdict,

8

and there is evidence to support the implied finding of guilt as the more reasonable of the two hypotheses, this court is bound by the finding of the jury.'" (*People v. Towler* (1982) 31 Cal.3d 105, 118.)

B.  September Mail Incident (Counts 1-2)

    1.  Facts

On a night in September, Riverside County Sheriff's Deputy Javier Morando saw Maldonado staggering down the street.  Deputy Morando believed Maldonado was intoxicated and asked if he could talk to him.  Maldonado was carrying a beer bottle and mail.  When Deputy Morando contacted Maldonado, Maldonado dropped the mail he was holding.

Maldonado had told Deputy Morando his name and Deputy Morando observed that none of the mail was addressed to Maldonado.  Maldonado stated the mail belonged to a friend, but was unable to provide the friend's name.  Maldonado later said that two white men gave him the mail.  Deputy Morando placed Maldonado under arrest for possession of stolen property and took his wallet and cell phone for safety.  In the wallet, Deputy Morando found a money order that did not belong to Maldonado.  Maldonado later told Deputy Morando that he had found the mail and money order on the ground as he was walking past the post office.  Maldonado said he should never have taken the mail and money order; instead, he should have left them.

Deputy Morando contacted Josephine Evans, who was identified as the sender on the money order found in Maldonado's wallet. Evans testified she did not know Maldonado and he had no right to possess the money order. She had purchased the money order, made it payable to her sister, and subsequently put it in a mailbox.

Maldonado testified that as he was walking to his house, he saw two white men scuffle, drop a bag and run away. Maldonado picked up the bag and saw that it had unopened mail inside. He took the bag with him and intended to leave it on top of a mailbox a few blocks away. He did not intend to keep the mail or money order for himself.

Maldonado also denied having told Deputy Morando different stories about how he came into possession of the mail. According to Maldonado, the only thing he told Deputy Morando was that two males dropped the mail. Maldonado also denied having any money orders.

2. Analysis

Maldonado argues insufficient evidence established that he had the requisite intent and knowledge to possess stolen mail and a money order arising from the September incident. We reject this argument.

In order to convict a person of receiving stolen property, the prosecution must prove, beyond a reasonable doubt, that (1) the property was stolen; (2) the defendant knew it was stolen; and (3) that the defendant possessed the property. (Pen. Code, § 496; *People v. Land* (1994) 30 Cal.App.4th 220, 223.) Proof of the required mental state can

be proved by direct evidence, but is often shown by circumstantial evidence. (*People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1019.) "[T]he knowledge element is inferred from the defendant's failure to explain how he came to possess a stolen item or his offer of an unsatisfactory explanation or from suspicious circumstances attendant upon his possession of the item." (*Id.* at pp. 1019-1020.) Possession of recently stolen property raises a strong inference of knowledge of its stolen nature. (*People v. Anderson* (1989) 210 Cal.App.3d 414, 421.) Moreover, "[f]alse or evasive answers to material questions with reference to the ownership of stolen property tend to prove such knowledge." (*People v. Reynolds* (1957) 149 Cal.App.2d 290, 294.)

Here, Maldonado gave Deputy Morando varying accounts of how he came into possession of the mail he was carrying. He first stated the mail belonged to a friend, but could not provide the friend's name, and later said that two white men gave him the mail. In a third version of events, Maldonado said he had found the mail and money order on the ground as he was walking past the post office. He also admitted that he should not have taken the items. In regard to the money order, Maldonado possessed it just a few days after Evans had placed it in the mail. Based on Maldonado's false and evasive statements regarding how he came to possess the mail and the suspicious circumstances, including that Evans had placed the money order in a mailbox, the jury could reasonably have found that Maldonado knew the mail was stolen.

Maldonado asserts his intoxication at the time that Deputy Morando stopped him was relevant to negate the knowledge element of the crime. However, Maldonado did not testify that he did not know what he was doing when he came into possession of the

11

mail. Rather, Maldonado testified that he picked up a bag containing unopened mail after two men dropped it and that he intended to leave the mail on top of a mailbox. Thus, according to Maldonado, he knew exactly what he was doing. Additionally, Maldonado had the ability to tell Deputy Morando at least three different versions of events, none of which included impairment due to intoxication. Based on this evidence, we reject Maldonado's argument that his intoxication negated his knowledge.

C. November Provident Bank Incident (Counts 3-6)

1. Facts

In November, Maldonado went into Provident Bank in Riverside to cash a check. Maldonado did not have an account at the bank, but the bank's policy was to cash checks under $500 for noncustomers if they had two forms of identification and signed the check in front of the teller. If the check was for an amount over $500, the bank would call the owner of the account to see if he or she wrote the check. The check Maldonado presented was for $420.

Maldonado presented a California driver's license and an inmate release card as identification. Maldonado matched the photograph on the driver's license and he signed the check in the bank teller's presence. Thus, the teller cashed the check and gave Maldonado $420. Photographs from the bank's surveillance camera showed Maldonado at the teller's window and leaving the bank. The photograph of Maldonado leaving the bank also showed an unidentified woman leaving the bank ahead of him.

After Maldonado left the bank, bank employees realized he had left his cell phone in the lobby. Maldonado did not return to retrieve his phone. Thus, the bank manager

12

called the maker of the check, Ramon Larranaga, and said his friend left a phone at the bank. The bank manager also specified the friend's check was for $420. Larranaga said he had not written a check in that amount. Larranaga had written the check Maldonado cashed to LaCuracao, a furniture store, in the amount of $120. Larranaga put the check in a mailbox. Someone had changed the amount of the check and the payee. Larranaga did not know Maldonado and had not given anyone permission to cash the check other than LaCuracao.

Maldonado testified that he met a woman in the parking lot outside of Provident Bank. The woman was with Larranaga. While Larranaga waited inside a car, the woman asked Maldonado to do her a favor by cashing a check because she did not have identification to do so. In exchange, the woman agreed to give Maldonado half of the money from the cashed check.

Maldonado stated he did not realize what he was doing was illegal. He did not alter the check and was unaware that it was altered. According to Maldonado, the check was already filled out when the woman gave it to him. Maldonado explained that he walked into the bank with the woman, endorsed the check, and cashed it. Thereafter, the woman gave Maldonado half of the money and then she walked off.

2. Analysis

In connection with the check he cashed at Provident Bank, the jury found Maldonado guilty of burglary, receipt of stolen property, passing an altered check, and possessing a completed check with intent to defraud. Maldonado argues the evidence

13

failed to prove his intent to defraud Provident Bank, commit larceny or a felony when he entered, and that he knew the check he presented was stolen.

### a. *Intent to Defraud*

Under Penal Code section 475, subdivision (c), "[e]very person who possesses any completed check, . . . whether real or fictitious, with the intent to utter or pass or facilitate the utterance or passage of the same, *in order to defraud any person*, is guilty of forgery." Similarly, Penal Code section 476 makes it a crime to pass or attempt to pass an altered check with *intent to defraud*.

Maldonado argues no reasonable juror could have found he possessed the requisite intent to defraud under the circumstances of this case where he used his own name and identification, personally endorsed the check in the teller's presence and left his cell phone at the bank. Maldonado essentially asserts that the jury should have believed his version of events that he cashed the check as a favor for an unidentified woman in exchange for half of the money. However, the jury was free to reject Maldonado's testimony and draw reasonable inferences from the evidence.

Based on the evidence, a jury could reasonably infer that Maldonado intended to defraud. As Maldonado acknowledges, there was sufficient evidence to establish that the check he negotiated was altered. Both the amount and payee had been changed. Larranaga, the check's maker, testified that he did not know Maldonado, had not seen him before, and had not given anyone permission to cash the check other than LaCuracao furniture store. Further, Larranaga stated he put the check in the mail. The jury was free to reject Maldonado's testimony in favor of Larranaga's version of events. Simply

14

because Maldonado used his own name and identification does not make Larranaga's testimony less credible or the inferences drawn therefrom unreasonable. We will not substitute one hypothesis for another where the jury's findings are reasonably justified and supported by substantial evidence. (*People v. Palmore*, *supra*, 79 Cal.App.4th at p. 1298; *People v. Towler*, *supra*, 31 Cal.3d at p. 118.)

        b. *Intent to Commit Larceny or a Felony*

Maldonado argues there was no substantial evidence to support his burglary conviction because there was no evidence that he intended to commit larceny or a felony upon entering the bank. We disagree.

Burglary is committed when a person enters a building "with intent to commit grand or petit larceny or any felony." (Pen. Code, § 459; *People v. Montoya* (1994) 7 Cal.4th 1027, 1041; see *People v. Lawrence* (2000) 24 Cal.4th 219, 232-233.) "[I]n reviewing the sufficiency of evidence to support a burglary finding, the requisite intent is rarely demonstrated by direct proof, and as a result, may be inferred from facts and circumstances." (*In re Leanna W.* (2004) 120 Cal.App.4th 735, 741; see *People v. Lewis* (2001) 25 Cal.4th 610, 643.) The intent to steal may be inferred from the totality of the facts and circumstances. (*People v. Frye* (1985) 166 Cal.App.3d 941, 947.) If the circumstances of a particular case and the conduct of the defendant reasonably indicate that his or her purpose in unlawfully entering a building is to commit larceny, a reviewing court will not disturb a guilty verdict on a burglary charge. (*People v. Swenson* (1938) 28 Cal.App.2d 636, 639-640.)

Here, Maldonado entered the bank with an altered check. The payee had been changed to Maldonado instead of LaCuracao and the amount was increased from $120 to $420. Larranaga stated he had put the check in the mail after writing it to LaCuracao. Although Maldonado testified that he was unaware that the check was altered and that it was already filled out when the unidentified woman gave it to him, the jury was free to reject that testimony and to infer from the circumstances that Maldonado had a felonious intent upon entering the bank. "It is the exclusive function of the trier of fact to assess the credibility of witnesses and draw reasonable inferences from the evidence." (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.) The fact that Maldonado used his own name and identification and left his cell phone at the bank does not convince us that the evidence is insufficient to find the requisite intent for burglary.

c. *Knowledge of Stolen Check*

Maldonado argues there was no substantial evidence to support his conviction for receipt of stolen property because there was no evidence that he knew the check he presented at Provident Bank was stolen.

"[T]o sustain a conviction for receiving stolen property, the prosecution must prove (1) the property was stolen; (2) the defendant knew the property was stolen; and (3) the defendant had possession of the stolen property." (*People v. Land*, *supra*, 30 Cal.App.4th at p. 223; *People v. Kunkin* (1973) 9 Cal.3d 245, 249.) "[P]ossession of stolen property, accompanied by no explanation, or an unsatisfactory explanation of the possession, or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had been stolen. The rule is generally applied where

16

the accused is found in possession of the articles soon after they were stolen." (*People v. Lopez* (1954) 126 Cal.App.2d 274, 278.)

Here, Maldonado cashed the stolen check one day after Larranaga put it in the mail. Although Maldonado offered an explanation as to how he came to possess the check, the jury was not required to credit his story, especially where the circumstances were suspicious. Maldonado stated an unidentified woman he met in the bank's parking lot asked him to cash the check, it was already filled in with his name before he obtained it, and he received a fifty percent fee for simply using his identification to cash the check. Based on the totality of the circumstances, including the suspicious events surrounding the check, the jury could reasonably infer that Maldonado knew the check was stolen.

### III. *Alleged Ineffective Assistance*

A. Background

During closing argument, defense counsel asked the jury to find Maldonado "guilty only of the charges he is guilty of" and "not guilty of any charges that he's not guilty of." Defense counsel continued, "Counts 3 through 6 [relating to Provident Bank] he's guilty. He went into the bank, either should have known or knew that he shouldn't have been doing that on that day. That wasn't a legitimate check. But all the other counts haven't been proven. [¶] So what we're asking you to do is follow the law, follow your duties, find Mr. Maldonado guilty of Counts 3 through 6, but not guilty of everything else."

B. Analysis

Maldonado argues his counsel provided ineffective assistance by telling the jury that he was guilty of counts 3 through 6 relating to the Provident Bank incident. We reject this argument.

A defendant claiming ineffective assistance of counsel has the burden to show: (1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Ledesma* (1987) 43 Cal.3d 171, 216, 218.) Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.)

Further, as is important here, "[r]eviewing courts reverse convictions on direct appeal on the ground of incompetence of counsel only if the record on appeal demonstrates there could be no rational tactical purpose for counsel's omissions." (*People v. Lucas* (1995) 12 Cal.4th 415, 442; see *People v. Anderson* (2001) 25 Cal.4th 543, 569.) "In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions." (*People v. Weaver* (2001) 26 Cal.4th 876, 926.)

"The right to effective assistance extends to closing arguments. [Citations.] Nonetheless, counsel has wide latitude in deciding how best to represent a client, and

18

deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." (*Yarborough v. Gentry* (2003) 540 U.S. 1, 5-6.) "The decision of how to argue to the jury after the presentation of evidence is inherently tactical[,]" and in that context our Supreme Court has acknowledged "the importance of maintaining credibility before the jury." (*People v. Freeman* (1994) 8 Cal.4th 450, 498.) "[G]ood trial tactics often demand complete candor with the jury, and . . . in light of the weight of the evidence incriminating a defendant, an attorney may be more realistic and effective by avoiding sweeping declarations of his or her client's innocence." (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1060-1061.) "Defense counsel must not argue against his or her client [citation], but it is settled that it is not necessarily incompetent for an attorney to concede his or her client's guilt of a particular offense." (*People v. Lucas*, *supra*, 12 Cal.4th at p. 446.)

Here, in light of the evidence, defense counsel reasonably could have concluded that he would lose credibility if he attempted to argue that Maldonado did not commit the crimes alleged as to the Provident Bank incident. Surveillance photos from the bank showed Maldonado cashing the check. Maldonado did not dispute that the check had been altered. The payee was changed to Maldonado and the amount was increased from $120 to $420. Larranaga testified he had put the check in a mailbox after writing it to a furniture store and he had not given Maldonado permission to cash it.

Although Maldonado offered an explanation that he met a woman in the Provident Bank parking lot who asked him to do her a favor by cashing the check in exchange for

19

half of the money, the evidence undermined that claim. Maldonado claimed the woman was with Larranaga. However, Larranaga testified that he had not previously seen Maldonado. Moreover, Larranaga's testimony contradicted Maldonado's claim that the unidentified woman gave him the check because Larranaga had dropped the check in a mailbox. Additionally, Maldonado's version of events was suspicious in that he claimed the check was filled out with his name before he obtained it and he received a substantial fee of $210 for simply cashing it.

Based on the evidence, defense counsel could have reasonably concluded that the jury would not believe Maldonado's version of events. Accordingly, it was a reasonable tactical choice for defense counsel to concede Maldonado's guilt as to the charges associated with the Provident Bank incident and to concentrate instead on weaknesses in the evidence supporting the other charges. We conclude Maldonado has not established ineffective assistance of counsel as he has not shown defense counsel had no tactical purpose for his concession of guilt.

IV. *Cumulative Error*

Maldonado argues that even if the errors he raises on appeal were not prejudicial individually, reversal is required because their cumulative effect rendered his trial fundamentally unfair in violation of due process. We find no merit to Maldonado's cumulative error contention. As discussed above, the trial court did not commit any error and, even if it did, such errors were harmless individually, as well as cumulatively.

20

## V. *Proposition 47*

Maldonado argues Proposition 47 (the Act), passed by voters on November 4, 2014, applies retroactively and requires we reduce his convictions on counts 1 through 7 to misdemeanors and remand the matter for resentencing.  The People do not dispute that counts 1 through 7 qualify for misdemeanor sentencing.  The People assert, however, that Maldonado's exclusive remedy is to petition for recall of his sentence when his conviction becomes final.

The Act "makes certain drug- and theft-related offenses misdemeanors, unless the offenses were committed by certain ineligible defendants.  These offenses had previously been designated as either felonies or wobblers (crimes that can be punished as either felonies or misdemeanors)."  (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1091.)  The Act also added section 1170.18 to the Penal Code, which provides:  "A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing."

In *People v. Noyan* (2014) 232 Cal.App.4th 657 (*Noyan*), the court considered the same issue before us and concluded that a defendant subject to the Act "is limited to the statutory remedy of petitioning for recall of sentence in the trial court once his judgment is final, pursuant to Penal Code section 1170.18."  (*Id.* at p. 672 [citing *People v. Yearwood* (2013) 213 Cal.App.4th 161 [concluding that a provision of Proposition 36,

21

the Three Strikes Reform Act of 2012, which created a postconviction resentencing procedure similar to Penal Code section 1170.18 was the "functional equivalent" of a saving clause].)  We agree with the conclusion in *Noyan* and several other recently published decisions that Maldonado is limited to the statutory remedy of petitioning for recall of sentence under Penal Code section 1170.18.  (*Noyan*, at p. 672; *People v. Delapena* (July 30, 2015, H041363) __ Cal.App.4th __ [2015 Cal.App.LEXIS 663]; *People v. Dehoyos* (2015) 238 Cal.App.4th 363, 366, petition for review filed August 3, 2015; *People v. Shabazz* (2015) 237 Cal.App.4th 303, 314.)

DISPOSITION

The judgment is affirmed.


McINTYRE, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.