**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUAN CARLOS BARRERA-LIMA,
*Petitioner*,

v.

JEFFERSON B. SESSIONS III, Attorney
General,
*Respondent.*

No. 13-73022

Agency No.
A087-595-463

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 7, 2018
Seattle, Washington

Filed August 24, 2018

Before: Raymond C. Fisher, Ronald M. Gould,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Paez;
Dissent by Judge Gould

# SUMMARY[*]

## Immigration

The panel granted Juan Carlos Barrera-Lima's petition for review of a decision of the Board of Immigration Appeals that found him ineligible for cancellation of removal and voluntary departure, holding that: 1) Barrera-Lima's convictions for indecent exposure under Wash. Rev. Code § 9A.88.010(1) and under Wash. Rev. Code § 9A.88.010(2)(b) are not categorically crimes involving moral turpitude; and 2) both statutes are indivisible such that the modified categorical approach is inapplicable, and remanded.

With respect to Barrera-Lima's indecent exposure conviction under Wash. Rev. Code § 9A.88.010(1), the panel concluded, as a threshold matter, that the BIA's decision in this case was not entitled to deference under either *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), or *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), because the BIA failed to properly apply its decision in *Matter of Cortes Medina*, 26 I. & N. Dec. 79 (BIA 2013). In *Cortes Medina*, the BIA held that indecent exposure statutes are categorically crimes involving moral turpitude if they include sexual motivation or lewd intent as an element. The BIA also embraced a definition of lewd intent that was restricted to sexually motivated exposure. Here, the panel concluded that *Cortes Medina*'s definition of lewd intent could not be squared with the BIA's decision in

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Barrera-Lima's case, in which the BIA concluded that lewd intent encompassed any general intent to harass, humiliate, outrage or frighten, and that lewd intent was not commensurate with sexual motivation. Thus, the panel determined that the BIA's decision in this case was not entitled to deference.

Next, the panel assumed, without deciding, that *Cortes Medina* is entitled to *Chevron* deference, explaining that Wash. Rev. Code § 9A.88.010(1) is overbroad regardless of whether the panel applied *Cortes Medina* or this court's earlier decision *Nunez v. Holder*, 594 F.3d 1124 (9th Cir. 2010), which the BIA rejected in *Cortes Medina*. The panel also noted that it did not address whether *Cortes Medina* was entitled to deference under *National Cable & Telecommunications Association v. Brand X Internet Services.*, 545 U.S. 967 (2005), because Barrera-Lima failed to raise that argument in his opening brief.

Applying *Cortes Medina*, the panel held that Wash. Rev. Code § 9A.88.010(1) is not categorically a crime involving moral turpitude because it lacks the critical element of lewd intent. The panel further concluded that the statute is indivisible and, therefore, the modified categorical approach is inapplicable.

With respect to Barrera-Lima's indecent exposure conviction under Wash. Rev. Code § 9A.88.010(2)(b), the panel noted that the statute included the additional requirement that a person under the age of fourteen be involved, but that the BIA failed to address that element. The panel concluded that this omission, combined with the BIA's erroneous application of *Cortes Medina*, rendered *Chevron* and *Skidmore* deference inapplicable with respect to this statute as well.

Because *Cortes Medina* did not provide an interpretation of morally turpitudinous conduct for indecent exposures that involve a protected class of victims, the panel addressed for the first time whether indecent exposure under Wash. Rev. Code § 9A.88.010(2)(b) is categorically a crime involving moral turpitude, and held it is not. The panel explained that, while the court has often concluded that crimes directed towards a protected class of victims are categorically crimes of moral turpitude, this statute is too broad to capture only conduct that shocks the public conscience. The panel also concluded, for the reasons discussed earlier, that the statute is indivisible and the modified categorical approach is inapplicable.

Accordingly, the panel concluded that, in the absence of a conviction for moral turpitude, Barrera-Lima is eligible to apply for cancellation of removal and voluntary departure, and remanded to the agency to consider those forms of relief.

In a concurrently filed order, the panel denied the government's motion to remand, noting that a majority voted to deny the motion, but Judge Gould would grant it. In the opinion, the panel explained that, while it would likely grant an unopposed motion in a run-of-the-mill case, the panel denied the motion because neither of the cases the government relied on has any bearing on Barrera-Lima's case.

Dissenting, Judge Gould wrote that he would grant the government's unopposed motion to remand. Judge Gould noted the general principle and practice that the court does not decide legal issues absent a need to do so, and observed that there is no way to predict whether the parties on remand might hit upon some innovative solution to resolve the case.

## COUNSEL

Alexander Ying-Chi Chan (argued), Bellevue, Washington, for Petitioner.

Victor Matthew Lawrence I (argued), Senior Litigation Counsel; Jeffrey J. Bernstein, Trial Attorney; Carl McIntyre, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

PAEZ, Circuit Judge:

Juan Carlos Barrera-Lima petitions for review of a decision by the Board of Immigration Appeals ("BIA") concluding that his prior convictions for indecent exposure rendered him statutorily ineligible for cancellation of removal under 8 U.S.C. § 1229b(b) as crimes involving moral turpitude. Because the BIA misapplied its own published precedent, we grant the petition for review and remand to the BIA to consider anew Barrera-Lima's request for cancellation of removal and voluntary departure.[1]

---

[1] In an order filed concurrently with this opinion, we deny the government's unopposed motion to remand this case for further proceedings. In the run-of-the-mill case, we would likely grant a motion of this kind. Indeed, Judge Gould's dissent is based on that view. Here, however, the government's motion makes no sense.

Neither case relied upon by the government for its motion to remand has any bearing on Barrera-Lima's case. *United States v. Valdivia-Flores*, 876 F.3d 1201 (9th Cir. 2017), addressed whether a petitioner's

## I.

Barrera-Lima, a 37-year-old citizen of Guatemala, entered the United States without inspection in 1999 as a teenager. On November 16, 2009, King County prosecutors charged Barrera-Lima in municipal court with one misdemeanor count of indecent exposure pursuant to Wash. Rev. Code § 9A.88.010(1). A little over two weeks later, on December 2, 2009, Barrera-Lima pled guilty to one count of indecent exposure to a victim under the age of fourteen, *see* Wash. Rev. Code § 9A.88.010(2)(b), a gross misdemeanor. As part of his plea statement, Barrera-Lima admitted that he

---

conviction under Washington's drug trafficking statute qualified as an aggravated felony when "the Washington drug trafficking law on its face appears to have a more inclusive mens rea requirement for accomplice liability than its federal analogue." *Id.* at 1207. We had no occasion in *Valdivia-Flores* to opine on crimes involving moral turpitude, much less indecent exposure statutes. The government's reliance on *Matter of Jimenez-Cedillo*, 27 I. & N. Dec. 1 (BIA 2017) for its motion to remand is similarly without merit. *Jimenez-Cedillo* addressed whether "sexual solicitation of a minor is a crime involving moral turpitude." *Id.* at 2. There, the BIA concluded that "a *sexual offense* in violation of a statute enacted to protect children is a crime involving moral turpitude where the victim is particularly young . . . , even though the statute requires no culpable mental state as to the age of the child," because "such offenses contravene society's interest in protecting children from *sexual* exploitation." *Id.* at 5 (emphases added). Wash. Rev. Code § 9A.88.010(2)(b), however, is not a sexual offense under Washington law and sexual motivation is not required for conviction. *See infra* pp. 20 n.10, 23.

In short, there is no indication that either case relied upon by the government for its motion to remand will change the BIA's decision here. We therefore adhere to our obligation to "say what the law is," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803), and deny the government's motion for remand.

"intentionally made an open and obscene exposure of [his] person to a person under the age of fourteen years knowing that such conduct was likely to cause reasonable affront or alarm." The court sentenced Barrera-Lima to 364 days in jail with 301 days suspended and ordered him to pay a $5,000 fine. The court further ordered Barrera-Lima to have no contact with two underage individuals or Kimble Elementary School and to "obtain [a] sexual deviancy evaluation and comply with recommended treatment."

On April 22, 2010, Barrera-Lima entered a second guilty plea.**[2]** This time, he pled guilty to one misdemeanor count of indecent exposure under Wash. Rev. Code § 9A.88.010(1). Unlike his first plea statement, Barrera-Lima omitted any mention of minor involvement in his plea statement and admitted only to "intentionally ma[king] an open and obscene gesture of [his] person knowing that conduct was likely to cause reasonable affront or alarm." The court sentenced Barrera-Lima to a fully-suspended sentence of 365 days in jail and fined him $5,000, all but $200 of which was suspended. As with the first plea, the court ordered Barrera-Lima to remain in compliance with his sexual deviancy treatment.

Pursuant to both pleas, Barrera-Lima entered into—and successfully completed—a year-long sexual deviancy program. The final treatment report opined that Barrera-Lima was at "low risk" of reoffending and noted that there had been no reports of inappropriate behavior with women

---

**[2]** It appears that both of Barrera-Lima's guilty pleas pertain to exposure(s) that took place on October 20, 2009 in Seattle. It is unclear from the record whether Barrera-Lima exposed himself twice on the same day or was simply charged twice for a single event involving multiple victims. It is similarly unclear why there was a delay of approximately five months between the two guilty pleas.

following Barrera-Lima's admission into the program. The report further highlighted Barrera-Lima's commitment to financially providing for his daughter and commented on Barrera-Lima's productive involvement with his family, work, and church. Satisfied with Barrera-Lima's progress, the provider terminated Barrera-Lima's treatment at the end of his probation period on September 1, 2011.

The end of Barrera-Lima's criminal proceedings did not, however, mark the end of his troubles. The government initiated removal proceedings against Barrera-Lima on December 2, 2009 for staying in the United States without being admitted or paroled. Seeking relief from removal, Barrera-Lima applied for cancellation of removal and, in the alternative, voluntary departure. The immigration judge ("IJ") denied his application, concluding that although Barrera-Lima's 2010 conviction for indecent exposure under Wash. Rev. Code § 9A.88.010(1) did not constitute a crime involving moral turpitude, his 2009 conviction for indecent exposure to a minor under the age of fourteen pursuant to Wash. Rev. Code § 9A.88.010(2) did. After determining that Washington's indecent exposure statute was categorically overbroad under *Nunez v. Holder*, 594 F.3d 1124 (9th Cir. 2010), the IJ applied the modified categorical approach and concluded that subsection (2) of Wash. Rev. Code § 9A.88.010 was a crime involving moral turpitude because it captured "crime[s] of a sexual nature committed against a protected class of victim." This, in turn, rendered Barrera-Lima ineligible for both cancellation of removal and voluntary departure. *See* 8 U.S.C. §§ 1229b(b)(1)(C), 1229c(b)(1)(B). The IJ then ordered Barrera-Lima removed to Guatemala.

Barrera-Lima unsuccessfully appealed the IJ's order to the BIA. In a single-member, unpublished decision, the BIA

disagreed with the IJ's determination that Washington's indecent exposure statute was categorically overbroad and divisible. The BIA rejected Barrera-Lima's argument that Washington's indecent exposure statute was categorically overbroad because sexual motivation is not required for conviction. In the agency's view, "for moral turpitude purposes, what matters is 'lewd intent,' not sexual motivation." Citing *Matter of Cortes Medina*, 26 I. & N. Dec. 79 (BIA 2013),[3] the BIA held that "[a] person who intentionally exhibits his private parts in order to harass, humiliate, outrage, or frighten a witness thereby engages in 'lewd' (i.e., obscene or indecent) conduct, whether or not the exposure was . . . motivated by a desire for sexual gratification."

The BIA then concluded that "all violations of Rev. Code. Wash. § 9A.88.010 necessarily involve both willful exposure of the offender's private parts and intentional lewdness" and that the offense was therefore categorically a crime involving moral turpitude.[4] The BIA thus affirmed the IJ's order of removal, concluding that Barrera-Lima's convictions for indecent exposure rendered him ineligible for both cancellation of removal and voluntary departure.

---

[3] *Cortes Medina* postdated the IJ's decision in this case.

[4] Barrera-Lima appealed only the IJ's determination that his conviction under Wash. Rev. Code § 9A.88.010(2)(b) for indecent exposure to a minor under the age of fourteen was a crime involving moral turpitude. On appeal, the BIA erroneously conflated Wash. Rev. Code § 9A.88.010(1) (general indecent exposure) with Wash. Rev. Code § 9A.88.010(2)(b) (indecent exposure to a minor)—two separate crimes—and concluded that Wash. Rev. Code § 9A.88.010 *as a whole* is categorically a crime involving moral turpitude.

Barrera-Lima timely petitioned for review.

## II.

"Whether a crime involves moral turpitude is a question of law that we have jurisdiction to review pursuant to 8 U.S.C. § 1252(a)(2)(D)." *Nunez*, 594 F.3d at 1129. We review de novo the BIA's interpretation of the statute of conviction. *Id.* If the BIA's "conclusion that a particular crime does or does not involve moral turpitude" relies on— or is itself—a precedential decision, we accord the decision *Chevron*[5] deference. *Id.* Otherwise, we apply *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), and defer to the BIA's conclusion only to the extent that it has the power to persuade. *See Nunez*, 594 F.3d at 1129. If the offense in question is not categorically a crime involving moral turpitude, we review de novo whether the statute of conviction is divisible for purposes of the modified categorical approach. *See Almanza-Arenas v. Lynch*, 815 F.3d 469, 477 (9th Cir. 2015) (en banc) ("Divisibility, like element identification, is reviewed de novo, because it 'is a purely legal question which does not require any additional fact finding.'" (quoting *Medina-Lara v. Holder*, 771 F.3d 1106, 1117 (9th Cir. 2014))).

## III.

We employ a "two-step framework for evaluating whether a conviction is categorically a [crime involving moral turpitude]." *Rivera v. Lynch*, 816 F.3d 1064, 1070 (9th Cir. 2015). The process itself is fairly straightforward: first, we identify the requisite elements for conviction under

---

[5] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

the statute. *See id.* Next, we apply the categorical approach to determine whether the elements of conviction match the generic definition of a crime involving moral turpitude. *See id.* If there is no realistic probability that "'the State would apply its statute to conduct that falls outside the generic definition' of moral turpitude," then the statute is a match and our inquiry comes to an end. *Nunez*, 594 F.3d at 1129 (quoting *Nicanor-Romero v. Mukasey*, 523 F.3d 992, 1004 (9th Cir. 2008), *overruled on other grounds by Marmolejo-Campos v. Holder*, 558 F.3d 903, 908 (9th Cir. 2009) (en banc)). If, however, there is a realistic probability that the State would apply the statute in a manner that captures non-morally turpitudinous conduct, the statute is not a categorical match and we must next ascertain whether the statute is divisible. *See Rivera*, 816 F.3d at 1078. Only when the statute is divisible into multiple crimes—at least one of which must categorically match the generic definition of a crime involving moral turpitude—do we apply the modified categorical approach to discern whether the petitioner's conviction can be narrowed to the qualifying crime.**[6]**

Because Barrera-Lima was convicted under Wash. Rev. Code § 9A.88.010(1) in 2010 and under Wash. Rev. Code

---

**[6]** The term "modified categorical approach"—to the extent it suggests that the modified and categorical approaches are two different tests—is a misnomer. As the Supreme Court has repeatedly explained, the modified categorical approach is simply a step in the categorical approach. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 187 (2007) (citing *Conteh v. Gonzales*, 461 F.3d 45, 54 (1st Cir. 2006)); *see also Descamps v. United States*, 570 U.S. 254, 263 (2013) ("[T]he modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute . . . . [It] thus acts not as an exception, but instead as a tool.").

§ 9A.88.010(2)(b) in 2009, we address each conviction in turn.

## IV.

## A.

Wash. Rev. Code § 9A.88.010(1) provides, in relevant part, that:

> A person is guilty of indecent exposure if he or she intentionally makes any open and obscene exposure of his or her person or the person of another knowing that such conduct is likely to cause reasonable affront or alarm. The act of breastfeeding or expressing breast milk is not indecent exposure.

The statute therefore requires that the government prove three elements in order to convict a defendant of indecent exposure: (1) the defendant made an "open and obscene" exposure of his or her genitalia or that of another person's, *see State v. Vars*, 237 P.3d 378, 382 (Wash. Ct. App. 2010) (explaining that indecent exposure requires "an exposure of genitalia in the presence of another"); (2) the defendant did so intentionally; and (3) the defendant knew that such conduct would likely cause "reasonable affront or alarm." *See* 11 Wash. Prac., Pattern Jury Instr. Crim. WPIC 47.02 (4th ed. 2016) (listing elements).

Relying on *Vars*, the BIA added a fourth element to the offense: that of lascivious intent, which it further defined to mean "tending to excite lust; lewd; indecent, obscene." In so doing, it committed the first of several legal errors.

In *Vars*, the question before the court was whether "the State must prove that a witness observed the defendant's naked genitalia as an element of the crime of indecent exposure." 237 P.3d at 381. Because the statute does not define "open and obscene exposure," the court relied on Washington common law to shed light on the legislature's intended meaning. *See id.* It was in this limited context that the court defined "open and obscene exposure" to mean "'a lascivious exhibition of those private parts of the person which instinctive modesty, human decency, or common propriety require shall be customarily kept covered in the presence of others.'" *Id.* (quoting *State v. Galbreath*, 419 P.2d 800, 803 (Wash. 1966)). Emphasizing that the "gravamen of the crime is an intentional and 'obscene exposure' in the presence of another," the court concluded that a witness's observation of the defendant's genitalia was immaterial to guilt. *Id.* at 382.

There is no indication that the court intended in *Vars* to add sexual or lewd intent as an element of indecent exposure. *See id.* at 382–83 ("[T]he issue is whether sufficient circumstantial evidence exists to prove that Vars intentionally exposed himself in the presence of another and in a manner likely to cause affront or alarm."). Instead, *Vars* seems to suggest that "obscene" or "lascivious" exposure merely means *the act* of exposing one's genitalia as opposed to the defendant's specific intent—lewd, lustful, or otherwise—in exposing himself or herself. *See id.* at 382 n.16. Indeed, the Washington Supreme Court recently affirmed that "[n]othing in the statute or these definitions [of obscene and lascivious] inherently *requires* that an exposure be committed with a sexual motive." *State v. Murray*, 416 P.3d 1225, 1229 (Wash. 2018) (emphasis in original).

Nor does it make sense to read lewd intent into the statute. Wash. Rev. Code § 9A.88.010(1) was expressly amended in 2001 to exclude breastfeeding. *See* 2001 Wash. Legis. Serv. Ch. 88 (West). Such an amendment would have been superfluous if conviction for indecent exposure truly required lewd or lascivious intent. Rather, the amendment appears to carve out an exception to what constitutes "obscene" exposure. In other words, while exposing one's breast is generally an obscene act, breastfeeding is not. *See also* S. 227, 57th Leg. First Reg. Sess. (Wash. 2001) (proposing, unsuccessfully, to amend section 9A.88.010 to exclude breastfeeding from the offense of indecent exposure only if "the breast remains covered").

Washington's indecent exposure statute is therefore notable for its unusual breadth. The exposure need not have taken place in a public space, *see State v. Dubois*, 793 P.2d 439, 441 (Wash. Ct. App. 1990), been observed, *see Vars*, 237 P.3d at 381, or actually caused affront or alarm, *see State v. Eisenshank*, 521 P.2d 239, 241 (Wash. Ct. App. 1974), in order to sustain conviction. Moreover, unlike similar indecent exposure statutes in other states, conviction does not require the state to prove that the exposure was motivated by "sexual arousal, gratification, or affront," *Nunez*, 594 F.3d at 1130—it need only prove that the defendant intentionally exposed his or her genitalia in the presence of another person knowing that the exposure would cause reasonable affront or alarm, *see* Wash. Rev. Code § 9A.88.010(1).

## B.

With these elements in mind, we turn to the categorical approach and address whether Wash. Rev. Code § 9A.88.010(1) maps cleanly onto the generic definition of moral turpitude. We conclude that it does not.

**1.**

As a threshold matter, we first hold that the BIA's decision is entitled to neither *Chevron* nor *Skidmore* deference. Ordinarily, a decision by the BIA is entitled to *Chevron* deference when it relies on a precedential BIA decision to determine that certain conduct is morally turpitudinous. *See Rivera*, 816 F.3d at 1070. Here, however, the BIA's failure to properly apply *Cortes Medina* to Washington's indecent exposure statute takes its unpublished order well beyond the bounds of both *Chevron* and *Skidmore*.

At issue in *Cortes Medina* was "whether indecent exposure under California law is categorically a crime involving moral turpitude." 26 I. & N. Dec. at 81. Rejecting our prior determination in *Nunez* that it was not,[7] the BIA focused on the fact that conviction under California's indecent exposure statute requires "a finding of lewdness," specifically, "lewd intent." *Id.* at 84. In the BIA's view, the critical distinction between indecent exposure statutes that are categorically crimes involving moral turpitude and those that are not is the inclusion of sexual motivation or lewd intent as an element of the offense. Thus, a juvenile who exposes himself to "annoy and affront others, but not for purposes of sexual gratification," has not engaged in morally turpitudinous conduct because "he did not act with lewd intent." *Id.* On the other hand, someone who engages in masturbation near women in a movie theater has committed

---

[7] The BIA relied on *National Cable & Telecommunications Association v. Brand X Internet Services.*, 545 U.S. 967 (2005) to reject our contrary determination in Nunez.

a crime involving moral turpitude because he acted with sexual motivation—i.e., lewd intent. *See id.* at 83.

The BIA emphasized that under its interpretation of morally turpitudinous conduct, "only a conviction that includes lewd behavior as defined by the California Supreme Court would involve moral turpitude" for crimes involving indecent exposure. *Id.* at 85. The BIA therefore focused on a California Supreme Court opinion defining lewd purpose or intent to mean "'purposes of sexual arousal, gratification, or affront.'" *See, e.g.*, *id.* at 85 (quoting *In re Smith*, 497 P.2d 807, 810 (Cal. 1972)). *Smith* itself concluded that "a person does not expose his private parts 'lewdly' within the meaning of [the statute] unless his conduct is sexually motivated." 497 P.2d at 810. *Cortes Medina* thus embraced a definition of lewd intent that was restricted to sexually motivated exposure. *See* 26 I. & N. Dec. at 84 ("We conclude that a person convicted of indecent exposure in violation of section 314(1) has committed a crime involving moral turpitude because a finding of lewdness is necessary for conviction."); *see also id.* n.4 (citing *Polk v. State*, 865 S.W.2d 627 (Tex. Ct. App. 1993) approvingly for distinguishing between exposure and exposure with the "intent to arouse or gratify sexual desire" (internal quotation marks omitted)).

*Cortes Medina*'s definition of lewd intent cannot be squared with the BIA's decision in the instant case. *Cortes Medina* explicitly recognized that exposure with the intent to annoy or affront others—absent some sexual motivation—does not satisfy the requirements for lewd exposure. *See id.* at 84. Yet the BIA inexplicably concluded here that "lewd intent" encompasses any general intent to "harass, humiliate, outrage, or frighten." Even more baffling, the BIA concluded—despite clear language from

*Cortes Medina* to the contrary—that lewd intent is not commensurate with sexual motivation. The result is a decision untethered to any published precedent.

An agency that misapplies its own precedent is not entitled to *Chevron* deference, which is reserved for those decisions that are precedential or are appropriately "based on" a previously issued precedential decision. *Saldivar v. Sessions*, 877 F.3d 812, 815 n.3 (9th Cir. 2017). Accordingly, we conclude that where, as here, the BIA erroneously applies its published precedent in an unpublished decision, that decision is entitled only to *Skidmore* deference. *See, e.g.*, *id.* (concluding that because the BIA misinterpreted its own precedent, its "interpretation could not govern, regardless of which level of deference it is due"); *cf. Padilla-Padilla v. Gonzales*, 463 F.3d 972, 980–81 (9th Cir. 2006) ("We defer to an agency's interpretation of its own regulations. However, where that interpretation is 'plainly erroneous or inconsistent with the regulation' we will not so defer." (citation and internal alteration omitted) (quoting *Salehpour v. INS*, 761 F.2d 1442, 1445 (9th Cir. 1985))).

The BIA's unpublished decision in this case fares little better under *Skidmore*, which takes into consideration the "thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking power to control." 323 U.S. at 140. As we have explained, the BIA's analysis here is plainly inconsistent with *Cortes Medina*, which gravely undermines its persuasiveness. *See Saldivar*, 877 F.3d at 815 n.3 ("For the reasons given in this opinion, including the BIA's misinterpretation of *Blancas-Lara* itself, . . . we do

not find the BIA's interpretation of § 1229b(a)(2) to be persuasive or based on valid reasoning.").

To the extent the BIA sought to expand upon *Cortes Medina*'s definition of lewd intent in a single-member, unpublished decision, its lack of explanation or reason for doing so renders its new interpretation of morally turpitudinous conduct exceedingly unpersuasive. *See Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1211 (9th Cir. 2013) (declining to defer to the BIA's decision under *Skidmore* where the decision contained "no analysis at all" and "little reasoning"). This is particularly true given that the BIA's new and expansive definition of lewd intent to include non-sexually motivated exposures would render many, if not most, state convictions for indecent exposure crimes involving moral turpitude—an outcome *Cortes Medina* expressly disavowed. *See Cortes Medina*, 26 I. & N. Dec. at 82 ("We have long held that indecent exposure is not inherently turpitudinous in the absence of lewd or lascivious intent.").

## 2.

Having concluded that the BIA's decision here is not entitled to deference, we next address whether all conduct captured by Wash. Rev. Code § 9A.88.010(1) falls within the generic definition of morally turpitudinous conduct.[8]

---

[8] We do not remand for the agency to reapply the categorical approach because all three *Fregozo v. Holder*, 576 F.3d 1030 (9th Cir. 2009) requirements have been met: (1) only legal questions remain, none of which implicate the BIA's expertise; (2) all relevant evidence regarding Barrera-Lima's convictions has already been presented to the BIA; and (3) the BIA has already determined that the offense falls within the generic definition of the crime. *See id.* at 1036; *see also Flores-Lopez*

We assume, without deciding, that *Cortes Medina* is entitled to *Chevron* deference and that the BIA's interpretation of morally turpitudinous indecent exposure in *Cortes Medina* controls in this instance, because Washington's indecent exposure statute is overbroad regardless of whether we apply *Nunez* or *Cortes Medina*.[9]

*Cortes Medina* held that "for the offense of indecent exposure to be considered a crime involving moral turpitude under the immigration laws, the statute prohibiting the conduct must require not only the willful exposure of private parts but also a lewd intent." 26 I. & N. Dec. at 83. Lewd

---

*v. Holder*, 685 F.3d 857, 865–66 (9th Cir. 2012) (summarizing the *Fregozo* factors).

[9] We do not address whether *Cortes Medina* is entitled to *Chevron* deference under *Brand X*, because Barrera-Lima failed to raise this argument in his opening brief. *See Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003) ("In general, 'we will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief.'" (internal alteration omitted) (quoting *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992))). We note, however, that while *Brand X* permits agencies to reject a court's interpretation of an ambiguous statutory provision so long as the new interpretation is reasonable, it is not clear that an agency can advance an interpretation that the courts have previously deemed unambiguously foreclosed by law. *See Brand X*, 545 U.S. at 982–83 ("Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction."); *cf. Mercado-Zazueta v. Holder*, 580 F.3d 1102, 1114 (9th Cir. 2009) ("In sum, neither *Brand X* nor *Duran Gonzales* suggests that an agency may resurrect a statutory interpretation that a circuit court has foreclosed by rejecting it as unreasonable at *Chevron*'s second step."), *abrogated on other grounds by Holder v. Martinez Gutierrez*, 566 U.S. 583 (2012) (concluding the BIA's interpretation both times was reasonable).

intent, in turn, refers to sexually motivated conduct—whether it be for sexual gratification, sexual affront, or some other sexual purpose entirely. *See id.* at 83–85. Unlike California's indecent exposure statute, however, Wash. Rev. Code § 9A.88.010(1) contains no such element of lewd intent. *See Murray*, 416 P.3d at 1229 (rejecting the argument that indecent exposure is "inherently sexual in nature" and concluding that "[n]othing in the statute or these definitions inherently *requires* that an exposure be committed with a sexual motive" (emphasis in original)). As the Washington Court of Appeals explained in *Vars*, "sexual motivation is an aggravating circumstance that can support an exceptional sentence" for indecent exposure offenses—it is not required to convict a defendant of indecent exposure. 237 P.3d at 383. A prosecutor may therefore separately file a "special allegation of sexual motivation" to try to enhance the defendant's sentence, but such allegations are not required for run-of-the-mill indecent exposure cases.[10] *Id.*

Put simply, Washington's indecent exposure statute lacks the morally turpitudinous element critical to the BIA's determination in *Cortes Medina*: lewd intent. As we have recognized before, "if 'a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime.'" *Chavez-Solis*

---

[10] This may explain why Washington does not consider indecent exposure a sex offense. *See* Wash. Rev. Code § 9.94A.030(47) (excluding indecent exposure from its definition of "sex offense"); *see also State v. Murray*, 416 P.3d 1225, 1228 (Wash. 2018) ("Indecent exposure is *not* one of the crimes defined as a sex offense." (emphasis in original)).

*v. Lynch*, 803 F.3d 1004, 1009–10 (9th Cir. 2015) (quoting *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc)). Accordingly, the absence of any lewd intent element from Washington's indecent exposure statute means that there is a "realistic probability, not a theoretical possibility, that the State [will] apply its statute to conduct that falls outside the generic definition of a crime."[11] *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). We therefore conclude that indecent exposure under Wash. Rev. Code § 9A.88.010(1) is not categorically a crime involving moral turpitude.

## C.

We turn to the next step of the categorical approach—the modified categorical approach—to determine whether Washington's indecent exposure statute is divisible, and if so, whether any of the divisible crimes are categorically crimes involving moral turpitude. We conclude that Wash. Rev. Code § 9A.88.010(1) is indivisible and that the modified categorical approach is therefore inapplicable.

A statute is divisible only if it has "multiple, alternative elements, and so effectively creates 'several different crimes.'" *Almanza-Arenas*, 815 F.3d at 476 (quoting

---

[11] Indeed, the Washington Supreme Court recently affirmed "several conceivable examples where an individual could be convicted of indecent exposure but lack sexual motivation: (1) flashing a passerby for shock value, (2) streaking naked across a school campus, or (3) mooning someone out a window." *Murray*, 416 P.3d at 1229. Wash. Rev. Code § 9A.88.010(1) is therefore clearly categorically overbroad under *Cortes Medina*. *See* 26 I. & N. Dec. at 85 (explicitly distinguishing between non-morally turpitudinous "simple public nudity," such as mooning oncoming traffic without lewd intent, and "indecent exposure with a lewd intent," which *is* morally turpitudinous).

*Descamps v. United States*, 570 U.S. 254, 264 (2013)). If, however, the statute consists of a "'single, indivisible set of elements' with different means of committing one crime, then it is indivisible" and our inquiry comes to an end. *Id.* at 476–77 (quoting *Descamps*, 570 U.S. at 265). Wash. Rev. Code § 9A.88.010(1) clearly falls within the latter scenario. There is only one crime, and it consists of an indivisible set of three elements: (1) intentional and (2) open exposure of the defendant's or someone else's genitalia (3) knowing that the exposure was likely to cause reasonable affront or alarm. *See Vars*, 237 P.3d at 382–83; *see also* 11 Wash. Prac., Pattern Jury Instr. Crim. WPIC 47.02 (4th ed. 2016). This conclusion ends our inquiry as to Wash. Rev. Code § 9A.88.010(1). Presuming, as we must, that Barrera-Lima's 2010 conviction under Wash. Rev. Code § 9A.88.010(1) "rested upon nothing more than the least of the acts criminalized," *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (internal alterations and quotation marks omitted), we conclude that Barrera-Lima was not convicted of a crime involving moral turpitude.

## V.

Although the analysis is substantially similar, there are a few points of law regarding Barrera-Lima's 2009 conviction for indecent exposure to a person under the age of fourteen that require separate consideration. Again, we apply our two-step framework to assess whether Wash. Rev. Code § 9A.88.010(2)(b) is categorically a crime involving moral turpitude. We conclude it is not.

## A.

Wash. Rev. Code § 9A.88.010(2)(b)'s objective is clear and direct: "Indecent exposure is a gross misdemeanor on the first offense if the person exposes himself or herself to a

person under the age of fourteen years." To obtain a conviction under this statute, the state must prove beyond a reasonable doubt each of the following four elements: the defendant (1) intentionally (2) made an open exposure of their genitalia (3) to a child under the age of fourteen (4) knowing that such conduct was likely to cause reasonable affront or alarm. *See* 11 Wash. Prac., Pattern Jury Instr. Crim. WPIC 47.04 (collapsing the first and second elements). As with Wash. Rev. Code § 9A.88.010(1), conviction under Wash. Rev. Code § 9A.88.010(2)(b) does not require proof that the exposure have been sexually motivated, taken place in public, or caused affront or alarm. *See supra* p. 14. And although not a clearly settled question under Washington law, § 9A.88.010(2)(b)—like § 9A.88.010(1)—does not appear to require that the exposure have been actually observed by a person under the age of fourteen. *See State v. C.C.*, 2007 WL 2999104, at \*7 (Wash. Ct. App. 2007); *cf. Vars*, 237 P.3d at 382. The only additional requirement is that a person under the age of fourteen have been involved.

## B.

The BIA erroneously conflated Wash. Rev. Code § 9A.88.010(1) and Wash. Rev. Code § 9A.88.010(2)(b) in its analysis of Barrera-Lima's convictions. As a result, its decision fails to address Wash. Rev. Code § 9A.88.010(2)(b)'s additional element. That omission, combined with the BIA's erroneous application of *Cortes Medina*, *see supra* pp. 15–18, renders *Chevron* and *Skidmore* deference particularly inapplicable in this instance. Furthermore, *Cortes Medina* itself does not squarely govern the question at hand because it did not address indecent exposure statutes that involve a protected class of victims. Accordingly, even if the BIA had correctly applied *Cortes*

*Medina* in this case—which it did not—its decision would not be entitled to *Chevron* deference. *See Castrijon-Garcia*, 704 F.3d at 1210 ("*Chevron* deference is afforded to an unpublished decision only when it is 'directly controlled by a published decision interpreting the same statute.'" (quoting *Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010))).

Because *Cortes Medina* did not provide an interpretation of morally turpitudinous conduct for indecent exposures that involve a protected class of victims, we address for the first time whether all acts forbidden by Wash. Rev. Code § 9A.88.010(2)(b) can be characterized as morally turpitudinous. We conclude that they cannot.

We have long lamented the ambiguity inherent in the phrase "moral turpitude," an amorphous term that has consistently escaped precise definition. *See, e.g.*, *Nunez*, 594 F.3d at 1130 ("We have previously discussed at some length the inherent ambiguity of the phrase 'moral turpitude' and the consistent failure of either the BIA or our own court to establish any coherent criteria for determining which crimes fall within that classification and which crimes do not."); *see also Rohit v. Holder*, 670 F.3d 1085, 1088 (9th Cir. 2012) (acknowledging that the term "moral turpitude" is "the quintessential example of an ambiguous phrase" (quoting *Marmolejo-Campos*, 558 F.3d 903, 909 (9th Cir. 2009) (en banc))). Nonetheless, we have defined morally turpitudinous conduct to mean either fraudulent conduct or "vile, base, or depraved" behavior that "violates accepted moral standards." *Almanza-Arenas*, 815 F.3d at 476. We have repeatedly cautioned that under our definition, crimes other than fraud "must be more than serious; [they] must offend the most fundamental moral values of society, or as some would say, shock the public conscience." *Hernandez-*

*Gonzales v. Holder*, 778 F.3d 793, 801 (9th Cir. 2015) (quoting *Castrijon-Garcia*, 704 F.3d at 1212).

Applying that definition, we have often—although not always—concluded that crimes directed towards a protected class of victims, such as children, are categorically crimes of moral turpitude. *See Nunez*, 594 F.3d at 1132. At times, however, we will encounter a statute that is simply written too broadly to capture *only* depraved conduct that shocks the public conscience. *See Nicanor-Romero v. Mukasey*, 523 F.3d 992, 1000 (9th Cir. 2008) (concluding California's crime of annoying or molesting a child under the age of eighteen was not categorically a crime involving moral turpitude), *overruled on other grounds by Marmolejo-Campos v. Holder*, 558 F.3d 903, 911 (9th Cir. 2009) (en banc). This is one such statute.

Wash. Rev. Code § 9A.88.010(2)(b) is unusually broad: it appears that a defendant can be convicted of indecent exposure to a person under the age of fourteen even if *no one witnessed* the exposure, so long as the exposure took place in the presence of a child. *See C.C.*, 2007 WL 2999104, at *7; *cf. Vars*, 237 P.3d at 381. Nor, for that matter, need the exposure have been sexually motivated. *See Murray*, 416 P.3d at 1228–29; *Vars*, 237 P.3d at 383. Thus, in *C.C.*, the Washington Court of Appeals upheld the conviction of a boy who exposed his genitalia to his cousin, who was two years younger than him, in the back of a car.[12] *Id.* at *6–7. There is no indication—at least from the court's description—that the victim actually saw C.C.'s genitalia or

---

[12] C.C. was either eleven or twelve years of age at the time of the incident. *See C.C.*, 2007 WL 2999104, at *10.

that C.C. exposed himself for sexual gratification.**[13]**  Instead, the court focused on whether there was sufficient evidence to show that C.C. knew exposing himself "would cause reasonable affront or alarm."  *Id.* at *7.  Concluding that there was, the court affirmed his conviction.  *See id.*

*C.C.*'s behavior in the car, while inappropriate, cannot fairly be characterized as so vile and depraved as to shock the public conscience.  In *Nunez*, we recognized that a "12-year-old boy who pulled down his pants during class and showed his penis to two female classmates" had acted inappropriately, but concluded that the act itself could not "rationally be characterized as inherently base, vile and depraved."  594 F.3d at 1137–38.  This was despite California's requirement that the indecent exposure have been sexually motivated.  The lack of a corresponding requirement in *C.C.* further evidences Wash. Rev. Code § 9A.88.010(2)(b)'s disconnect from morally turpitudinous conduct.

Indeed, there are aspects of Wash. Rev. Code § 9A.88.010(2)(b) that trouble us more than the statute at issue in *Nicanor-Romero*, where we concluded that California's crime of annoying or molesting a child under the age of 18 was not a categorical crime involving moral turpitude.  For one, the statute in *Nicanor-Romero* required the State to prove that the defendant's conduct was

---

**[13]** C.C. was separately convicted of child molestation, second degree rape, and indecent liberties arising out of different incidents. *See C.C.*, 2007 WL 2999104, at *1 n.2.  Nonetheless, the court's decision addressing C.C.'s conviction for indecent exposure to a person under the age of fourteen made no mention of his motives for doing so. *See id.* at *6–7.  Furthermore, the decision does not indicate that C.C. was charged with sexually motivated indecent exposure as a sentence enhancement. *See id.*

"motivated by an unnatural or abnormal sexual interest in the victim." 523 F.3d at 1000 (quoting *People v. Lopez*, 965 P.2d 713, 717 (Cal. 1998)). Wash. Rev. Code § 9A.88.010(2)(b) contains no such requirement—our calculation might well be different if it did. For another, it may not even be the case that a defendant must have specifically intended to expose himself in the presence of a child—as opposed to simply exposing himself—in order to be convicted. *Cf. Vars*, 237 P.3d at 382 ("So long as an obscene exposure takes place when another is present and the offender knew the exposure likely would cause reasonable alarm, the crime has been committed."). *But see State v. Legg*, 2004 WL 234049, at *1–2 (Wash. Ct. App. 2004) (suggesting that there was sufficient evidence to support Legg's conviction for indecent exposure to a person under the age of fourteen because a witness overheard him saying that he "just wanted the boy to see what he would look like when he grew up"). Moreover, because it's unclear whether the exposure need even be witnessed by the child in question, Wash. Rev. Code § 9A.88.010(2)(b) "does 'not necessarily require harm or injury, whether psychological or physical.'" *Nicanor-Romero*, 523 F.3d at 1000 (quoting *United States v. Baza-Martinez*, 464 F.3d 1010, 1015 (9th Cir. 2006)).

Taken together, the expansive reach of Wash. Rev. Code § 9A.88.010(2)(b) leads us to conclude that the statute cannot categorically be a crime involving moral turpitude. Other indecent exposure statutes aimed at protecting a class of victims, such as children, may categorically qualify as crimes involving moral turpitude because they include any number of the elements missing from Wash. Rev. Code § 9A.88.010(2)(b)—sexual motivation, actual observation, or specific intent—but we are not called upon to assess those statutes. Furthermore, as *C.C.* demonstrates, there is a

realistic probability and not just a theoretical possibility that the State will apply Wash. Rev. Code § 9A.88.010(2)(b) to non-morally turpitudinous conduct. We therefore conclude that indecent exposure to a person under the age of fourteen pursuant to Wash. Rev. Code § 9A.88.010(2)(b) is not categorically a crime involving moral turpitude. We also conclude, for the reasons discussed earlier, that Wash. Rev. Code § 9A.88.010(2)(b) is indivisible and that the modified categorical approach is inapplicable. *See supra* pp. 21–22. Because we must presume that Barrera-Lima's conviction for indecent exposure to a person under fourteen years of age rested upon the least of the acts criminalized, *see Moncrieffe*, 569 U.S. at 191, we conclude that he was not convicted of a crime involving moral turpitude.

## VI.

In the absence of a conviction for a crime involving moral turpitude, Barrera-Lima is eligible to apply for cancellation of removal and voluntary departure. Accordingly, we grant his petition for review, vacate the order of removal, and remand to the agency to consider whether Barrera-Lima is otherwise eligible for cancellation of removal or voluntary departure.

**PETITION GRANTED AND REMANDED.**

GOULD, Circuit Judge, dissenting:

I respectfully dissent because I would grant the Respondent's Unopposed Motion to Remand. Our general principle and practice is that we do not decide legal issues absent a need to do so. Where the Government respondent seeks to gain remand so the Board of Immigration Appeals can consider the impact of how particular decided cases bear on the question whether a petitioner's prior conviction for particular state-law crime qualifies as a crime involving moral turpitude, disqualifying the petitioner from eligibility for cancellation of removal, and the petitioner himself does not oppose the motion indicating that he is agreeable to the proposed remand, we need not decide the case at this time. We cannot predict now with certainty how the BIA will resolve the issue on the proposed remand. We cannot predict with certainty whether there would be a new appeal on that decision. We cannot predict at all whether the petitioner or the Government on remand might hit upon some innovative solution to resolve the case. So why should we decide this case now?[1]

---

[1] The majority opinion in its footnote 1 contends that the unopposed motion to remand should be denied because the government's motion "does not make any sense," and the cases cited in the unopposed motion are not relevant. But we should not be deciding case issues when the parties are in agreement that it makes sense to remand to the BIA. We could take up the case again after the BIA decision if either party appealed it, but otherwise there is no need.

The BIA should be permitted to reassess in light of *Valdivia-Flores*. Instead, the majority gratuitously decides that all crimes of moral turpitude require a heightened *mens rea*. Where the parties agree to remand, it is unwise for us to render a decision on issues that need not now be decided by us.